**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KATELYN D. EDWARDS, *Administrator pendente lite of the Estate of JAMAIN ALLEN STEPHENS, Deceased and on behalf of all Wrongful Death Beneficiaries of JAMAIN ALLEN STEPHENS, Deceased*, | } } } } } | No. 2:23-cv-00086-CCW<br><br>Judge Wiegand |
| Plaintiff, | } } } | |
| vs. | } } | |
| CALIFORNIA UNIVERSITY OF PENNSYLVANIA; PENNSYLVANIA WESTERN UNIVERSITY *formerly known as CALIFORNIA UNIVERSITY OF PENNSYLVANIA*; GERALDINE M. JONES; STUDENT ASSOCIATION, INC.; GREYSTAR DEVELOPMENT SERVICES, LLC; GREYSTAR STUDENT LIVING MANAGEMENT SERVICES, LLC; JARED SHINER; GARY W. DUNN and KAREN HJERPE, | } } } } } } } } } } } | |
| Defendants. | } } | *Electronically Filed.* |

**BRIEF IN SUPPORT OF
UNDERSITY DEFENDANTS' MOTION TO DISMISS COMPLAINT**

**I.  STATEMENT OF THE CASE**

Plaintiff initiated this action on or about September 7, 2022, by filing a Praecipe for Writ of Summons through counsel in the Court of Common Pleas of Washington County, Pennsylvania.  The matter was docketed in that court at No. 2022-6012.  Plaintiff subsequently filed a counseled Complaint on or about December 22, 2022.  See Complaint [ECF 1-1].  The Defendants filed a Notice of Removal [ECF 1] in this Court on January 18, 2023, and the case was subsequently docketed at No. 2:23-cv-00086-CCW.

Plaintiff is the Administrator *Pendente Lite* of the Estate of Jamain Allen Stephens.  See Complaint [ECF 1-1], at ¶¶ 1-5.  Mr. Stephens was enrolled as a scholarship athlete at California University of Pennsylvania from 2017 until 2020.  Id., at ¶¶ 18-19.  After returning to his off-

campus housing at California University of Pennsylvania in August of 2020, Mr. Stephens experienced symptoms of the Covid-19 virus and subsequently returned a positive test. Plaintiff was hospitalized, but died on September 8, 2020, due to complications related to the Covid-19 virus. See Complaint [ECF 1-1], at ¶¶ 44-55.

Named as defendants are California University of Pennsylvania and several of its administrators along with other entities and individuals that own, operate and/or manage off-campus housing at California University of Pennsylvania. See Complaint [ECF 1-1], at ¶¶ 8-17. The Complaint asserts liability against the defendants for Mr. Stephens' death. The claims are asserted under the Fourteenth Amendment, as well as under state law for Survival and Wrongful Death. See Complaint [ECF 1-1], at *passim*.

The University Defendants now move to dismiss all claims against these Defendants as asserted in the Complaint [ECF 1-1].

## II.  STANDARD OF REVIEW

As succinctly explained by this Court,

> In reviewing a motion to dismiss the Court conducts a two-part analysis, first separating the factual and legal elements of a claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court 'may disregard any legal conclusions,' id., and then must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.' Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(*quoting* Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). However, the Court need not accept as true any unsupported conclusions, unsupported inferences, nor 'threadbare recitals of elements of a cause of action.' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and state a 'plausible claim for relief' to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). 'The plausibility standard is not akin to a "probability requirement," but

it asks for more than the sheer possibility that a defendant has
acted unlawfully.'  Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

Blank River Services v. Towline River Service, 395 F.Supp.3d 589, 595-596 (W.D.Pa. 2019).

See Comensky v. Pennsylvania, 2019 WL 1359241, *1-*2 (W.D.Pa. 2019).  See also Germinaro

v. Fidelity National Title Insurance Co., 107 F.Supp.3d 439, 447-448 (W.D.Pa. 2015).

### III.  ARGUMENT

This case arises from the unfortunate and untimely passing of Plaintiff's decedent,

Jamain Allen Stephens, a senior student-athlete enrolled at California University of

Pennsylvania.  In the Complaint [ECF 1-1], Plaintiff asserts several claims against the University

Defendants.  These include a Survival action at Count I, a Wrongful Death claim at Count II, a

Willful Misconduct (Survival) claim at Count III, a Willful Misconduct (Wrongful Death) claim

at Count IV, a Fourteenth Amendment Due Process (State Created Danger) claim at Count V, a

Fourteenth Amendment Due Process (Injury to Human Dignity) claim at Count VI, and a Section

1983 claim at Count VII.  As argued blow, the allegations at each of these respective counts fail

to state a claim against the University Defendants.  Accordingly, all claims against the University

Defendants should be dismissed and the University Defendants should be terminated from the

docket.  The claims will now be addressed *seriatim*:

> **A. Plaintiff's Survival and Wrongful Death claims at
> Counts I and II are barred as against the University
> Defendants by principles of sovereign immunity
> under Pennsylvania law.**

At Counts I and II, Plaintiff asserts claims of Survival and Wrongful Death, respectively.

See Complaint [ECF 1-1], at ¶¶ 56-76 (Survival), ¶¶ 77-79 (Wrongful Death).  Although

Plaintiff asserts that sovereign immunity is not available to the University Defendants, Plaintiff is

incorrect.  Under Pennsylvania law, sovereign immunity is afforded to "the Commonwealth, and

its officials and employees acting within the scope of their duties...”  <u>See</u> 1 Pa. C.S. § 2310 (relating to Sovereign immunity reaffirmed; specific waiver).

As understood by this Court, “[t]he sovereign immunity doctrine protects ‘the Commonwealth, and its officials and employees acting within the scope of their duties ... from suit except as the General Assembly shall specifically waive the immunity.’”  <u>See</u> <u>Deforte v. Borough of Worthington</u>, 364 F.Supp.3d 458, 486 (W.D.Pa. 2019)(<i>quoting</i> 1 Pa. C.S. § 2310), <i>aff’d</i>, 844 F.App’x 511 (3d Cir. 2021).

Further, “1 Pa. C.S. § 2310 clarifies that the General Assembly has waived sovereign immunity “only in such manner and in such courts and in such cases’ as set forth in Titles 42 and 62 of the Pennsylvania Consolidated Statutes.  The limited waivers of sovereign immunity in Title 42 relate solely to liability for negligence.”  <u>Celec v. Edinboro University</u>, 132 F.Supp.3d 651, 661 (W.D.Pa. 2015).  <u>See</u> <u>also</u> <u>Deforte v. Borough of Worthington</u>, 364 F.Supp.3d at 486 (“Pennsylvania state law provides a limited waiver of sovereign immunity for certain negligent acts …”)(<i>quoting</i> 1 Pa. C.S. § 8522(b))(relating to Exceptions to sovereign immunity).

In <u>Celec</u>, this Court concluded there was “no dispute” that the involved university there, “as an affiliate member of PASSHE, is entitled to general sovereign immunity protection.”  <u>See</u> <u>Celec v. Edinboro University</u>, 132 F.Supp.3d at 662 (<i>citing</i>, <i>inter alia</i>, <u>Armenti v. Pennsylvania State System of Higher Education</u>, 100 A.3d 772, 777 (Pa. Cmwlth. 2014)(noting that PASSHE is a Commonwealth instrumentality “cloaked with sovereign immunity”)(citation omitted)).  Indeed, Plaintiff concedes that PennWest California[1] and the University Defendants “are Commonwealth parties as defined by 42 Pa. C.S. § 8501.”  <u>See</u> Complaint [ECF 1-1], at ¶ 57.

---

[1]   Because of a recent name change, Plaintiff refers to Defendant California University of Pennsylvania and Defendant Pennsylvania Western University formerly known as California

As such, PennWest California and the University Defendants are entitled to assert the defense of sovereign immunity for claims sounding in negligence unless sovereign immunity has been waived.  For negligence claims, the exceptions for sovereign immunity are found in 42 Pa. C.S. § 8522.[2]  These exceptions are for claims of (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  42 Pa. C.S. §8522(b).[3]  Any tort claim against the Commonwealth that does not fall under one of these nine exceptions is barred by sovereign immunity.  See 1 Pa. C.S. § 2310.

Critically, Pennsylvania courts have consistently observed that "[b]ecause of the clear intent to insulate [the] government from exposure to tort liability, the exceptions to [sovereign] immunity are to be strictly construed."  Dean v. Commonwealth, Department of Transportation, 751 A.2d 1130, 1132 (Pa. 2000)(quoted in Doe v. Franklin County, 174 A.3d 593, 605 (Pa. 2017) and Byrne v. Department of Military & Veterans Affairs, 2019 WL 1284539, *3 (Pa.

---

University of Pennsylvania collectively as "PennWest California."  See Complaint [ECF [1-1], at ¶¶ 8-10.  To avoid confusion, the University Defendants will also adopt this convention herein.

[2] 42 Pa. C.S. § 8522(a) provides:

> The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

[3]  This section was recently amended to add a tenth category of exception for "Sexual abuse." See 42 Pa. C.S. § 8522(b)(10).

Cmwlth. 2019)).  See also Mucy v. Nagy, 2023 WL 1108390, *14 (W.D.Pa. 2023); Celec v. Edinboro University, 132 F.Supp.3d at 670 (citations omitted).

While recognizing the doctrine, Plaintiff contends that her claims against the University Defendants are not barred by sovereign immunity.  See Complaint [ECF 1-1], at ¶¶ 59-61, 78. Specifically, Plaintiff asserts that such immunity is not available to PennWest California and the University Defendants "because the Commonwealth real estate, highways, and sidewalk exception applies under 42 Pa. C.S. § 8522(b)(4)."  Id., at ¶¶ 60, 78.

Section 8522(b)(4) provides that the exception for Commonwealth real estate, highways and sidewalks applies to

> [a] dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

42 Pa. C.S. § 8522(b)(4).[4]

The Commonwealth Court of Pennsylvania has discussed the Commonwealth real estate exception in the following terms:

> the so-called 'real estate exception' … provides that a Commonwealth agency is liable when a plaintiff's injuries are caused by a dangerous condition of Commonwealth agency real estate.  42 Pa. C.S. § 8522(b)(4).  See also Thornton v. Philadelphia Housing Authority, 4 A.3d 1143, 1148 (Pa. Cmwlth. 2010).  The agency must have known, or had reason to know, of the dangerous condition on its property to be held liable.  Gurnari v. Luzerne County Housing Authority, 911 A.2d 236, 239 (Pa. Cmwlth. 2006).  If a defect or dangerous condition merely facilitates an injury which is caused by the acts of a person, the

---

[4]  The reference to paragraph (5) is directed to "Potholes and other dangerous conditions."  See 42 Pa. C.S. § 8522(b)(5).  However, there is no claim that this provision applies to the facts of this case.

> defect or dangerous condition is not actionable. <u>Williams v. Philadelphia Housing Authority</u>, 873 A.2d 81, 86 (Pa. Cmwlth. 2005)(*citing* <u>Mascaro v. Youth Study Center</u>, 514 Pa. 351, 523 A.2d 1118 (1987)).

<u>Weckel v. Carbondale Housing Authority</u>, 20 A.3d 1245, 1250 (Pa. Cmwlth. 2011).

The Commonwealth Court further elaborated on this exception in <u>Wilson v. Pennsylvania Department of Corrections Bureau of Operations Partment of Corrections Bureau of Operations and Maintenance Construction and Capital Programs Chief</u>, 2015 WL 6493367 (Pa. Cmwlth. 2015), initially stating that "[f]or a claim to proceed under the real estate exception to sovereign immunity, a plaintiff must allege that an artificial condition or defect of the land *itself* caused the injury." <u>Id.</u>, at *1 (emphasis added). The court continued:

> it is not sufficient to allege that the real property facilitated an injury caused by the acts of Commonwealth employees or third persons. <u>Jones v. Southeastern Pennsylvania Transportation Authority</u>, 772 A.2d 435, 443-444 (Pa. 2001)(having neither derived nor originated from train platform, salt on the ground was not a dangerous condition of real estate that caused plaintiff's injuries); <u>Warnecki v. Southeastern Pennsylvania Transportation Authority</u>, 689 A.2d 1023, 1025 (Pa. Cmwlth. 1997)(poor safety maintenance in subway station facilitated injury but injuries were caused by the criminal acts of third persons); <u>Gallagher v. Commonwealth, Bureau of Corrections</u>, 545 A.2d 981, 984 (Pa. Cmwlth. 1980)(severing of inmate's finger was not caused by a defect in the door, but by a cellmate closing the door).
>
> Likewise, the real estate exception does not apply to claims alleging that a plaintiff's injuries could have been avoided or minimized had the Commonwealth taken certain actions, as opposed to claims based on injury from a defect or dangerous condition of the real property. <u>Dean v. Department of Transportation</u>, 751 A.2d 1130, 1135 (Pa. 2000)(failure to install a guardrail is not a dangerous condition); <u>Snyder v. Harmon</u>, 562 A.2d 307, 313 (Pa. 1989)(an unlit right-of-way along the shoulder of a road, which concealed a nearby strip-mine, is not an artificial condition or a defect of the land itself); <u>Weckel v. Carbondale Housing Authority</u>, 20 A.3d 1245, 1248, 1250 (Pa. Cmwlth. 2011)(allegation that death may have been prevented by the door to the roof being equipped with a lock is irrelevant); *compare* <u>Thornton v. Philadelphia Housing Authority</u>, 4 A.3d 1143, 1149-

1153 (Pa. Cmwlth. 2010)(holding that a claim fell within the real estate exception to sovereign immunity where the plaintiff alleged that a defective fire/smoke detection system was a dangerous condition that caused fatal injuries).

Wilson v. Pennsylvania Department of Corrections Bureau of Operations Partment of

Corrections Bureau of Operations and Maintenance Construction and Capital Programs Chief,

2015 WL 6493367, at *1.

Under the forgoing rubric, Plaintiff fails to establish that "an artificial condition or defect of the land *itself* caused the injury." Plaintiff alleges that the

> apartment leased [by Mr. Stephens] through Vulcan Village constituted a dangerous condition in the context of COVID-19 because the apartment was not equipped to offer proper protections to students from COVID-19 due to the existence of shared spaces where students were in contact with others and could not social distance, inadequate ventilation and inability to have separate spaces for positive/negative COVID-19 students.

> By requiring students, such as Jamain Allen Stephens, to return to campus if they lived in Vulcan Village, the Defendants exposed students to COVID-19 and any and all risks of the disease because Vulcan Village was not in proper condition to prevent or limit the spread of COVID-19.

> As a result of Defendants' decisions and the shortcomings of Vulcan Village's property, Jamain Allen Stephens was exposed to COVID-19 and died from complications of COVID-19.

> Therefore, the sovereign immunity exception of Commonwealth real estate, highways, and sidewalks applies under 42 Pa. C.S. § 8522(4). In sum, the real estate known as Vulcan Village was in an unsafe and improper condition such that the spread of COVID-19 could not be prevented and was exacerbated.

Complaint [ECF 1-1], at ¶¶ 67-70.

Yet, within these allegations, Plaintiff fails to identify the defect or dangerous condition of the Commonwealth real estate *itself*. Rather, Plaintiff alleges that Mr. Stephens "was exposed to COVID-19 and died from complications of COVID-19. Complaint [ECF 1-1], at ¶ 69. In Jones v. Southeastern Pennsylvania Transportation Authority, 772 A.2d 435 (Pa. 2001), the

supreme court of Pennsylvania conducted an extensive analysis of the real estate exception in the

Sovereign Immunity Act and its corollary provision in the Political Subdivision Tort Claims Act.

Said the court:

> We agree that the key to § 8522(b)(4)'s meaning lies in the polestar of legislative intent, the plain meaning of the exception's 'dangerous condition of' language.  42 Pa. C.S. § 8522(b)(4); 1 Pa. C.S. § 1921.  We also agree that a return to our interpretation of § 8522(b)(4) in [Snyder v. Harmon, 522 Pa. 424, 431, 562 A.2d 307, 311 (1989)], which was founded on our understanding of that very phrase, is warranted.  Accordingly, guided by *Snyder*, we conclude that a claim for damages for injuries caused by a substance or an object on Commonwealth real estate must allege that the dangerous condition "derive[d], originate[d] or ha[d] as its source the Commonwealth realty" itself, if it is to fall within the Sovereign Immunity Act's real estate exception.  Snyder, 562 A.2d at 311 & n. 5.  In other words, assuming all other requirements of the statutory exception at 42 Pa. C.S. § 8522(b)(4) are met, the Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that a substance or an object on Commonwealth realty was the result of a defect in the property or in its construction, maintenance, repair or design.
>
>   At this point, we revisit the precedent we previously discussed. Our decision in this case and our decision in Finn are entirely consistent.  Here, as there, we focus on the 'dangerous condition of' phrase that the statutory exceptions in the Sovereign Immunity and Tort Claim Acts share respectively, and are guided by *Snyder's* teaching.  Thus, *Finn's* essential holding that application of 42 Pa. C.S. § 8542(b)(7) depends on the 'legal determination that an injury was caused by a condition of the government realty itself deriving, originating from, or having the realty as its source', 664 A.2d at 1346, is identical to our present holding.  This is as it should be, since the material words the General Assembly used in the Sovereign Immunity Act's real estate exception mirror the material words it used in the Tort Claims Act's sidewalk exception. 42 Pa. C.S. §§ 8522(b)(4); 8542(b)(7).
>
>   Moreover, our interpretation of 42 Pa. C.S. § 8522(b)(4) does not conflict with *Kilgore's*[5] and *Grieff's*[6] interpretation of the Tort Claims Act's real estate exception.  42 Pa. C.S. § 8542(b)(3).  As aptly noted in those cases, the language the legislature chose for

---

5  Kilgore v. City of Philadelphia, 717 A.2d 514 (Pa. 1998).

6  Grieff v. Reisinger, 693 A.2d 195 (Pa. 1997).

subjecting the Commonwealth to liability under 42 Pa. C.S. § 8522(b)(4) –'a dangerous condition of Commonwealth agency real estate'– varies markedly from the language it chose for subjecting a local agency to liability under 42 Pa. C.S. § 8542(b)(3) –the 'care, custody or control of real property….'  See Kilgore, 717 A.2d at 518 n. 6; Grieff, 693 A.2d at 197 n. 3.  Because the words the General Assembly used in the Sovereign Immunity Act are one way and the words it used in the Tort Claims Act are another, we are of the view that the legislature did not intend that § 8422(b)(4) and § 8542(b)(3) be interpreted in lockstep.

It now remains to apply the Sovereign Immunity's Act's real estate exception to the claim before us.  In her complaint, Jones avers that 'salt on the ground' of SEPTA's train platform constituted a 'dangerous condition', causing her to slip and fall and suffer bodily harm.  The complaint, however, has no averments, which if proven, would establish that the salt derived or originated from or had as its source the train platform itself.  We conclude, therefore, that Jones' claim does not satisfy the terms of 42 Pa. C.S. § 8522(b)(4), the Sovereign Immunity Act's real estate exception, and that SEPTA is immune from Jones' suit under 42 Pa. C.S. § 8521.

Jones v. Southeastern Pennsylvania Transportation Authority, 772 A.2d at 443-444 (footnote and citation to record omitted).

Having concluded in *Jones* that the presence of a tangible substance such as salt on Commonwealth real estate did not fall within the exception, it would seem that as a matter of Pennsylvania law, an intangible or incorporeal element –such as the Covid-19 virus– would not qualify as a defect or dangerous condition of the real estate itself.  Moreover, given the circumstances of the Covid-19 pandemic, there can be no argument brought forward to suggest that the presence of Covid-19 at Vulcan Village (or California University of Pennsylvania for that matter) was a unique and isolated occurrence limited to that real estate.  Cf. Cook v. Garman, 274 A.3d 780 (Pa. Cmwlth. 2022)("The Court notes that the potential for exposure to COVID-19 exists in society at-large and is not unique to the prison setting").

Further, Plaintiff's allegations that certain actions, omissions and decisions on the part of the individual defendants caused Mr. Stephens' exposure to and subsequent death from Covid-19, also serve to take this claim out of the Commonwealth real estate exception to sovereign immunity.  Indeed, the Pennsylvania supreme court has held that the failure to provide protective measures to real state does not bring a claim within the real estate exception.  See, e.g., Dean v. Commonwealth, Department of Transportation, 751 A.2d 1130, 1134 (Pa. 2000)("We simply find that the legislature did not intend to impose liability upon the government whenever a plaintiff alleged that his or her injuries could have been avoided or minimized, had the government installed a guardrail along side the roadway").

Finally, accepting Plaintiff's allegations as falling within the exception for Commonwealth real estate would, contrary to the General Assembly's clearly stated intent of limiting Commonwealth liability, have the opposite effect of greatly expanding potential suits against the Commonwealth.  Indeed, anyone who had been exposed to or contracted Covid-19 or other infectious disease could make a plausible claim of contact with a Commonwealth property, be it a university campus, Commonwealth office building, state park, highway or roadway, that would require the Commonwealth to defend against such claims.  Yet, such a determination could only be made by ignoring the Pennsylvania supreme court's direction to strictly construe the exceptions to sovereign immunity.   See Dean v. Commonwealth, Department of Transportation, 751 A.2d at 1132.  See also St. Paul Fire & Marine Insurance Co. v. Nolen Group., Inc., 2005 WL 639722, *6 (E.D.Pa. 2005)("Like all supposed waivers of sovereign immunity, the Court is to strictly construe the language of the 'real estate' exception")(citing Jones v. Southeastern Pennsylvania Transportation Authority, 772 A.2d at 440).

Plaintiff's Survival and Wrongful Death claims do not fall under any of the exceptions to sovereign immunity enumerated in 42 Pa. C.S. § 8522.  Thus, PennWest California and the University Defendants are protected from such claims by sovereign immunity under Pennsylvania law.  Accordingly, Counts I and II should be dismissed as against these defendants as a matter of law.

> **B. Plaintiff's Survival and Wrongful Death claims predicated on allegations of willful misconduct at Counts III and IV are also barred as against the University Defendants by principles of sovereign immunity under Pennsylvania law.**

At Counts III and IV, Plaintiff reiterates her claims of Survival and Wrongful Death, but asserts such claims as Willful Misconduct.  See Complaint [ECF 1-1], at ¶¶ 80-88 (Willful Misconduct (Survival)), ¶¶ 89-91 (Willful Misconduct (Wrongful Death)).  However, these claims, too, are barred by principles of sovereign immunity under Pennsylvania law.

Plaintiff alleges that PennWest California and the University Defendants "engaged in willful misconduct in their response to COVID-19."  See Complaint [ECF 1-1], at ¶ 81.  More specifically, Plaintiff alleges that these defendants –and others– "were aware of the risks of COVID-19 in that it could cause death, yet [they] did not take any action and/or took inadequate action to implement policies and procedures that would ensure the safety of students in regard to COVID-19, which resulted in Jamain Allen Stephen's death."  Id., at ¶ 83.

Plaintiff then prefaces a list of specific acts or omissions attributed to the defendants by asserting that "Jamain Allen Stephen's death was caused by the intentional, malicious, willful;, wanton , reckless and/or liability producing conduct" of the defendants.  See Complaint [ECF 1-1], at ¶ 84.  The enumerated actions that follow this allegation relate to the operation and management of the PennWest California football program, the development and implementation

of Covid-19 policies and procedures for PennWest California, and the operation and management of university housing.  Id., at ¶ 85.

This Court has consistently recognized as a matter of Pennsylvania law that

> [i]t is well established that Commonwealth employees acting within the scope of their employment are generally immune from suit except in situations where immunity has been explicitly waived. Under Pennsylvania's sovereign immunity statute, 'an employee of the Commonwealth ... acting within the scope of his or her employment or duties, is protected by sovereign immunity from the imposition of liability for intentional tort claims.' Mitchell v. Luckenbill, 680 F.Supp.2d 672, 682 (M.D. Pa. 2010) *quoting* Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc., 694 A.2d 1134, 1139 (Pa. Cmwlth. Ct. 1997).  'Even willful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress.'  Spiker v. Allegheny County Bd. of Probation & Parole, 920 F.Supp.2d 580, 611 (W.D. Pa. 2013) *quoting* Mitchell, 680 F.Supp.2d at 682.

Wenzel v. Bovee, 2022 WL 4236715, *7 (W.D.Pa. 2022)(footnote omitted).  See Mucy v. Nagy, 2023 WL 1108390, *15 (W.D.Pa. 2023).  See also Jefferson v. Wetzel, 2018 WL 4609162, *4, *report and recommendation adopted*, 2018 WL 4599729 (W.D.Pa. 2018); Bates v. Morris, 2016 WL 1166371, *2, *report and recommendation* adopted, 2016 WL 1161218 (W.D.Pa. 2016).

The *Wenzell* court has provided further guidance as to when a Commonwealth employee is acting within the scope of his or her employment:

> Under Pennsylvania law, 'an action falls within the scope of employment if it:  (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; [and] (3) is motivated at least in part by a desire to serve the employer….'  Kircher v. Pennsylvania State Police Dep't, 2016 WL 4379143, at *26 (M.D.Pa. 2016) *quoting* Mitchell, 680 F.Supp.2d at 682. Although the scope of employment determination is usually reserved for the factfinder, 'where the appropriate resolution of that issue is readily apparent from the evidence, disposition on the grounds of immunity should not be delayed.'  Id. at *28.  After all, 'the motivating force behind

13

> grants of immunity to government entities and their employees is
> to free them from litigating over actions taken and decisions made
> to carry out effective governance.' Id.

Wenzel v. Bovee, 2022 WL 4236715, *7.[7]  See also Jefferson v. Wetzel, 2018 WL 4609162, at

*5; Bates v. Morris, 2016 WL 1166371, at *3.  Cf. Garvin v. Borough, 2015 WL 4756394, *6

(W.D.Pa. 2015)(citing Restatement (Second) of Agency § 228 (1958)).

In making his analysis, one court has observed that "the test for whether one acted within

the scope of one's employment is drawn at a higher level of generality…" See Aina v. Howard-

Vital, 2013 WL 5567798, *7 (E.D.Pa. 2013).  This Court has also recognized that

> just because an act is allegedly unauthorized or malicious does not
> mean that it occurred outside the scope of employment. See
> Strothers v. Nassan, No. 08-1624, 2009 WL 976604, at *8
> (W.D.Pa. Apr. 9, 2009)(reasoning that "even unauthorized actions
> taken by an employee can fall within the scope of his or her
> employment if they are 'clearly incidental' to his or her employer's
> objectives")(citing Brumfeld[ v. Sanders], 232 F.3d [376,] at 381
> [(3d Cir. 2000)]; Jones v. Pennsylvania Minority Bus. Dev. Auth.,
> No. 974486, 1998 WL 199653, at *3 (E.D.Pa. Apr. 23,
> 1998)(holding that even assuming Commonwealth employees'
> malicious motives for denial of a loan request, their actions still
> fell within the scope of employment).

Garvin v. Borough, 2015 WL 4756394, at *6.

Initially, there is no allegation anywhere within the Complaint that any of the University

Defendants were acting outside the scope of their employment.  To the contrary, the Complaint

alleges that each University Defendant "is an adult individual who at all times pertinent hereto

was an employee of Defendant California University of Pennsylvania and/or Defendant

---

[7] Courts have recognized an additional element in cases involving uses of force by an employee
and/or claims of excessive force.  See Wenzel v. Bovee, 2022 WL 4236715, *7 ("'(4) if force
was used by the employee against another, the use of force is not unexpectable by the
employer'").  There is no such claim involved in this case.

Pennsylvania Western university f/k/a California University of Pennsylvania…"  See Complaint [ECF 1-1], at ¶¶ 11 (Jones), 16 (Dunn), 17 (Hjerpe).

More particularly, as to the University Defendants, Plaintiff has alleged that their actions and conduct related to the operation and management of the PennWest California football program, the development and implementation of Covid-19 policies and procedures for PennWest California, and the operation and management of university housing.  See Complaint [ECF 1-1], at ¶ 85.  Plaintiff also alleges that the University Defendants communicated with students "regarding housing and COVID-19" and "reassured its students that COVID-19 protocols were in place to protect its students from COVID-19."  Id., at ¶ 29.

Any actions so related to the preceding areas of university administration would necessarily be the kind that the University Defendants would be employed to perform within their respective roles as President, Football Coach and Athletic Director.  Indeed, these would appear to be the kind of "activity that intuitively comes to mind when considering" the respective roles of the University Defendants.  Cf. Flagg v. International Union, Security, Police, Fire Professionals of America, Local 506, 146 A.3d 300, 309 (Pa. Cmwlth. 2016).

Such actions would likely occur substantially within their respective positions at PennWest California within the authorized time and space limits and any actions or decisions made regarding the operation of football program and university housing, particularly as related to addressing the Covid-19 pandemic would be motivated at least in part by a desire to serve PennWest California.  Thus, it would appear that the actions and conduct attributed to the University Defendants would have necessarily occurred within the scope of their employment as university administrators, particularly within their respective roles as President, Football Coach and Athletic Director.  Accordingly, because the University Defendants were acting within the

scope of their respective employment during the times the allegedly tortious conduct is alleged, they are entitled to the protections of sovereign immunity under Pennsylvania law.

### C. Plaintiff cannot assert any claims against the PennWest California defendant pursuant to Section 1983.

Plaintiff asserts three federal law claims against the entity denominated as PennWest California. At Counts V and VI, Plaintiff asserts substantive due process claims against this and other individual University Defendants under the Fourteenth Amendment and, at Count VII, Plaintiff asserts a "violation of civil rights pursuant to 42 U.S.C. § 1983" solely against Defendants California University of Pennsylvania and Pennsylvania Western University f/k/a/ California University of Pennsylvania (referenced as "PennWest California"). See Complaint [ECF 1-1], at ¶¶ 114-126.

Initially, as this Court has explained, "Section 1983 is not an independent source of substantive rights, but merely 'provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws.'" Loper v. Sheils Law Associates P.C., 2019 WL 3937228, *2 (W.D.Pa. 2019)(quoting Kopec v. Tate, 361 F.3d 772, 775-776 (3d Cir. 2004)). See also Neumeyer v. Beard, 421 F.3d 210, 213 (3d Cir. 2005)(citing and quoting Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979)). See also Phillips ex rel. Estate of Phillips, deceased v. Northwest Regional Communications, 2010 WL 3279171, *3 (3rd Cir. 2010)

Indeed, "[t]o establish liability under Section 1983, a plaintiff must demonstrate: (1) *a deprivation under the Constitution or laws of the United States*, (2) by a person acting under color of state law." Loper v. Sheils Law Associates P.C., 2019 WL 3937228, *2 (emphasis added)(citing Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)). See also Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005). Thus, to the extent that Plaintiff seeks to assert a claim solely pursuant to Section 1983, no claim is stated. See Reed v. Chambersburg

<u>Area School District</u>, 951 F.Supp.2d 706, 722 (M.D.Pa. 2013)(dismissing "a general claim pursuant to 42 U.S.C. § 1983" as duplicative of other claims).

Plaintiff's claims against PennWest California at Counts V and VI are clearly brought under the Fourteenth Amendment.  <u>See</u> Complaint [ECF 1-1], at ¶¶ 92-105 (Count V), ¶¶ 106-113 (Count VI).  At Count VII, Plaintiff also includes an allegation that "PennWest California's action violated Jamain Allen Stephens' rights under the United States Constitution (14th Amendment Due Process violations) because PennWest California's policies, customs and procedures, or lack thereof, regarding COVID-19 caused Jamain Allen Stephens to contract COVID-19 and subsequently die from the disease." <u>Id.</u>, at ¶ 120.

Nevertheless, such allegations fail to preserve any Section 1983 claim against the PennWest California because it is not considered a "person" for purposes of this statute.  As this Court has again recently confirmed,

> in order to state a claim under Section 1983, a plaintiff must allege: that the alleged deprivation was committed or caused by a person amenable to suit under Section 1983 and acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  But the Commonwealth of Pennsylvania is not a 'person' within the meaning of Section 1983.  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989)(state not person under Section 1983).

<u>Spuck v. Pennsylvania</u>, 2022 WL 17979674, *3, *report and recommendation adopted*, 2022 WL 17976327 (W.D.Pa. 2022).

Indeed, by now, it is beyond dispute that "[s]tate agencies … are not" persons for purposes of § 1983." <u>See</u> <u>Estate of Lagano v. Bergen County Prosecutor's Office</u>, 769 F.3d 850, 854 (3d Cir. 2014)(*quoted in* <u>Disco v. Thompson</u>, 2020 WL 3980655, *8, *report and recommendation adopted*, 2020 WL 2059745 (W.D.Pa. 2020).  <u>See</u> <u>McEntyre v. Southeastern</u>

Veterans' Center, 2022 WL 5027202, *4 (E.D.Pa. 2022)("A state agency is not a 'person' under § 1983").

This Court has previously found that California University of Pennsylvania is not a person for purposes of a Section 1983 claim.  See Toth v. California University of Pennsylvania, 844 F.Supp.2d 611, 648 (W.D.Pa. 2012)(holding that California University of Pennsylvania is not a person with respect to plaintiff's constitutional claims under Section 1983).  Cf. Seybert v. West Chester University, 83 F.Supp.2d 547, 553 n. 13 (E.D.Pa. 2000)(holding that West Chester University is not a person under Section 1983).  See also Skehan v. State System of Higher Education, 815 F.2d 244 (3d Cir. 1987); O'Hara v. Indiana University of Pennsylvania, 171 F.Supp.2d 490 (W.D.Pa. 2001).  Thus, notwithstanding that the defendants have removed this action to federal court,[8] Plaintiff cannot proceed against the PennWest California defendants on

---

[8]  Indeed, had this matter remained in state court, PennWest California would have been entitled to assert this same argument under *Will* against any Section 1983 claim.  See Watkins v. Pennsylvania Department of Corrections, 196 A.3d 272, 275 (Pa. Cmwlth. 2018)(finding that plaintiff "as a matter of law has no cause of action against" a Commonwealth agency)(*citing* Will v. Michigan Department of State Police, 491 U.S. 58, 64-71 (1989)); Freemore v. Department of Corrections, 2021 WL 3412754, *3 (Pa. Cmwlth. 2021)(same).

  To be clear, PennWest California is not claiming immunity from suit under the Eleventh Amendment; rather, it is asserting as a matter of Section 1983 jurisprudence that –regardless of the forum– it is not a person for purposes of Section 1983 under Will v. Michigan Department of State Police, 491 U.S. 58 (1989).  See, e.g., Wilson v. Somerset County Prosecutors Office, 2016 WL 1090811, *7 (D.N.J. 2016)("Although the removal of this action waives the Prosecutor Defendants' Eleventh Amendment immunity from suit in a federal forum, it does not affect the application of *Will's* personhood requirement.  See Didiano v. Balicki, CIV. No. 10-4483 RBK/AMD, 2011 WL 1466131, at *8 (D.N.J. Apr. 18, 2011)(explaining that a state (or state entity) is still not a person for § 1983 purposes regardless of whether it waived its Eleventh Amendment immunity by removing such claims to federal court), *aff'd*, 488 F.App'x 634 (3d Cir. 2012)").  Cf. Moreno v. Idaho, 2017 WL 1217113, *3 (D.Idaho 2017)("A § 1983 damages action can never proceed against a state, its agencies, or its actors in their official capacity—even if a state's sovereign immunity has been waived by removal to federal court—because those entities are not deemed "persons" under the statute")(*citing* Will v. Michigan Department of State Police, 491 U.S. 58 (1989)).  See also Lee v. Winthrop University, 2018 WL 6288112, *3, *report and recommendation adopted*, 2018 WL 6267813 (D.S.C. 2018); Sinn v. Lemmon, 2017 WL 4552066, *1 (S.D.Ind. 2017).

any claim under Section 1983 because they are not a person for such purposes. Accordingly, as to PennWest California, Counts V, VI and VII should be dismissed, with prejudice.

### D. Plaintiff's claims asserting violations of substantive due process under the Fourteenth Amendment fail to state a claim.

Plaintiff purports to assert violations of substantive due process as part of her Complaint against the University Defendants. Particularly, Plaintiff presents a State Created Danger claim under the Fourteenth Amendment at Count V, see Complaint [ECF 1-1], a ¶¶ 92-105, and a claim under the Due Process Clause of the Fourteenth Amendment for "injury to human dignity enforceable pursuant to 42 U.S.C. § 1983" at Count VI, see Complaint [ECF 1-1], a ¶¶ 106-113. These claims are asserted against PennWest California and individual University Defendants Jones, Dunn and Hjerpe. Id.

> The Due Process Clause of the Fourteenth Amendment has two prongs: procedural due process and substantive due process. To state a claim under § 1983 for deprivation of procedural due process, 'a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law."' Hill v. Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006)(citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).
>
> A substantive due process claim is different and 'is reserved for the most egregious governmental abuses against liberty or property rights, abuses that "shock the conscience or otherwise offend ... judicial notions of fairness ... [and that are] offensive to human dignity."' River Nile Invalid Coach and Ambulance, Inc. v. Velez, 601 F.Supp.2d 609, 621 (D.N.J. 2009)(quoting Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir. 1989)).

Ewing v. City of Philadelphia, 2021 WL 6197368, *1 n. 3 (E.D.Pa. 2021).

Plaintiff's substantive due process claims will be addressed together because –even if viable– both claims ultimately fail because Plaintiff cannot establish conscience shocking conduct by any University Defendant.

A.   **State-Created Danger.**   The Third Circuit has aptly confirmed that "[t]he government has no general legal duty to keep people safe."  See Mears v. Connolly, 24 F.4th 880, 883 (3d Cir. 2022)(*citing* DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 195-196 (1989)).  "But it assumes one 'when it affirmatively places [a] person in a position of danger [that] the person would not otherwise have faced.'  Kamara v. Att'y Gen., 420 F.3d 202, 216 (3d Cir. 2005).  Then, the government must protect people from the dangers it created.  The Fourteenth Amendment's Due Process Clause requires it to do so.  Id."  Mears v. Connolly, 24 F.4th 880 at 883.

"Although the Due Process Clause does not impose an affirmative obligation on the State to protect its citizens, there is an exception to this general rule which 'holds an officer liable if his conduct exposes an individual to a "state-created danger."'"  Brown v. Newell, 2019 WL 4242031, *2 (W.D.Pa. 2019)(*quoting* Kedra v. Schroeter, 876 F.3d 424, 436 (3d Cir. 2017)). See also Vorobyev v. Wolfe, 2022 WL 16553388, *7 (M.D.Pa. 2022)("DeShaney does not preclude the existence of constitutional violations where 'state authority is affirmatively employed in a manner that injures a citizen or renders him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention"')(citation omitted).

As this Court has recently explained,

> [t]he state-created-danger doctrine is a claim under the Due Process Clause of the Fourteenth Amendment.  See Sanford v. Stiles, 456 F.3d 298, 304 (3d Cir. 2006)('[W]e first adopted the state-created danger theory as a mechanism by which plaintiffs may establish constitutional violations under 42 U.S.C. § 1983. We confirmed that liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process.").  See also Kneipp v. Tedder, 95 F.3d 1199, 1201, 1205 (3d Cir. 1996);

> Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 478 (3d Cir. 2003).

Bailey v. Wood, 2022 WL 17552749, *7 (W.D.Pa. 2022).

This Court has set forth the legal standard for the state-created danger theory in the following terms:

> To prevail under this theory, a plaintiff must show that:

>> (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor "acted with a degree of culpability that shocks the conscience"; (3) the state and the plaintiff had such a relationship such that "the plaintiff was a foreseeable victim of defendant's acts," as opposed to a member of the public in general; and (4) the official affirmatively used his authority "in a way that created danger to the citizen or that rendered the citizen more vulnerable to danger" than had he never acted.

> Id. at 436 (*quoting* Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006)).

Brown v. Newell, 2019 WL 4242031, at *2.  See Mears v. Connolly, 24 F.4th at 883-884.  See also B.P. by & through L.P. v. North Allegheny School District, 579 F.Supp.3d 713 (W.D.Pa. 2022)(wherein this Court addressed the state created danger doctrine in the Covid-19 context "involving issues related to school masking").

Finally,

> [t]he Third Circuit has repeatedly emphasized that liability under the state-created danger doctrine 'requires affirmative state action; mere "failure to protect an individual against private violence" does not violate the Due Process Clause.' Bright, 443 F.3d at 284 (quoting DeShaney, 489 U.S. at 197); see also Ye v. United States, 484 F.3d 634, 638 (3d Cir. 2007).

Henry v. Philadelphia Adult Probation and Parole Department, 2007 WL 2670140, *7 (E.D.Pa. 2007).

Under this analysis, Plaintiff cannot satisfy the necessary elements of the legal standard for establishing a state-created danger.  While any number of cases have been found addressing

claims regarding exposure to Covid-19 by incarcerated individuals, see, e.g., Hope v. Warden York County Prison, *supra*; Verma v. Doll, 2020 WL 1814149 (M.D.Pa. 2020), few cases have been found addressing the issue in the context of post-secondary education.

In one such case, America's Frontline Doctors v. Wilcox, 2022 WL 1514038 (C.D.Cal. 2022), several students at the University of California (and its constituent schools) presented claims challenging the University's Covid-19 vaccine policy.  The court dismissed the student-plaintiffs' substantive due process claims premised on the state-created danger and special relationship doctrines "'... based upon the deliberate indifference of Defendants to a known and obvious danger of' the COVID-19 vaccine." Id., at *9 (citation to record omitted).

First, addressing the state-created danger claim, the court concluded that

> [p]laintiffs fail to establish a state-created danger claim for several reasons; the Court need not list them all because 'by its very nature, the doctrine only applies in situations in which the plaintiff was directly harmed **by a third party**...' [Martinez v. City of Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019)](*citing* Henry A. Willden, 678 F.3d 991, 1002 (9th Cir. 2012)(emphasis in original). Plaintiffs do not allege that a third party harmed them, and that Defendants failed to protect against that third party.  Thus, Plaintiffs' state-created danger claim fails at the outset.

America's Frontline Doctors v. Wilcox, 2022 WL 1514038, at *10.

Here, too, the harm was not caused by a third party.  Rather, it was caused by a virus that was the source of a world-wide pandemic.  Accordingly, as in *Wilcox*, Plaintiff's state-created danger claim "fails at the outset."  Id.  Nor, *arguendo*, can Plaintiff satisfy the necessary elements of such a claim:

### *(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct*

> Under the first prong of the Third Circuit's state created danger test, the Plaintiffs must bring forth facts within their Complaint to show that the harm ultimately caused to the plaintiff was foreseeable and fairly direct.  To adequately plead foreseeability

> under this standard, a plaintiff must 'allege an awareness on the
> part of the state actors that rises to the level of actual knowledge or
> awareness of risk that is sufficiently concrete to put the actors on
> notice of the harm.'   Id. at 237.   Additionally, the risk of
> irreparable harm alleged by the plaintiff must not be speculative.
> Adams v. Freedom Forge Corp., 204 F.3d 475, 488 (3d Cir. 2000).

B.P. by & through L.P. v. North Allegheny School District, 579 F.Supp.3d at 728.

Plaintiff's allegations do not suffice to show that the harm ultimately caused was foreseeable and fairly direct.  While there is no question that the Covid-19 virus was fatal in certain circumstances, there are no allegations that the conditions at PennWest California made the virus more deadly.  Plaintiff's untimely death occurred just as PennWest California was making efforts to reopen the campus following the disruption caused by the onset of Covid-19 in the Spring of 2020.  Yet, there is no allegation that any prior Covid-19 deaths had occurred at PennWest California such that the University Defendants would have some notice of deficiencies in its protocols and procedures at the time of Mr. Stephens' death.

Finally, on this issue, the University Defendants would commend the following observations of a court faced with a state created danger claim arising in the context of a correctional facility:

> Although it is true that 'COVID-19 can quickly cause grave illness
> to even those in good health', Petitioner has not shown there is a
> substantial risk that any individual who contracts COVID-19—let
> alone a healthy, 48-year-old like Petitioner—will sustain serious
> harm.  Hernandez v. City of San Jose], 897 F.3d [1125] at 1133
> [(9th Cir. 2018)](plaintiff asserting state-created danger claim must
> show an "actual, particularized danger" that resulted in
> "foreseeable" injury); Gordon, 888 F.3d at 1125 (plaintiff asserting
> special relationship claim must show that the challenged
> "conditions put the plaintiff at substantial risk of suffering serious
> harm").  Nor has Petitioner cited any legal authority to support the
> proposition that any risk of serious harm is sufficient to support a
> constitutional claim.  Cf. Lopez-Marroquin v. Barr, 955 F.3d 759,
> 761 (9th Cir. 2020)(Callahan, J., dissenting)("I also have serious
> concerns over Lopez's attempt to attack the Executive Branch's

> handling of COVID-19 at Otay Mesa and other detention facilities.
> Lopez is a generic detainee, in that he claims neither to have
> contracted the virus nor to suffer from any underlying health issues
> placing him at greater risk than anyone else in Government
> custody.  Lopez's motion, then, is really just the camel's nose
> under the tent.  If he's entitled to relief, then who isn't?").

Ibarra-Perez v. Howard, 468 F.Supp.3d 1156, 1171 (D.Ariz. 2020).

### *(2) the state-actor "acted with a degree of culpability that shocks the conscience"*

Next, it must be demonstrated that a state actor acted with a degree of culpability that

shocks the conscience.[9]  "'Shocking the conscience' is a very high standard that requires state

action to be 'ill-conceived or malicious.'"  Young v. Scott Township, 2019 WL 6174345, *3

(M.D.Pa. 2019)(*quoting* Johnson v. City of Philadelphia, 397 F.Supp.3d 692, 703 (E.D.Pa.

2019)(quotations and citations omitted)).

Initially, there are no specific allegations regarding any particular actions taken by any of

the named defendants.  Moreover, it is largely alleged that the individual University Defendants

failed to act, see Complaint [ECF 1-1], at ¶¶ 84a.-j., 125a.-125x., which is not sufficient.  Indeed,

our courts have consistently held that any

> theory of liability based solely on a failure of the state to act is
> clearly foreclosed by DeShaney.  … we know from DeShaney that
> no affirmative duty to protect arises 'from the State's knowledge of
> the individual's predicament.'  DeShaney, 489 U.S. at 200, 109
> S.Ct. 998.  Liability requires affirmative state action; mere 'failure
> to protect an individual against private violence' does not violate
> the Due Process Clause.  Id. at 197, 109 S.Ct. 998.

Bright v. Westmoreland County, 443 F.3d at 284.

---

[9] As has been noted by this Court, the Third Circuit "incorporated into the 'state-created danger'
doctrine three possible standards gleaned from previous cases to determine whether state action
shocked the conscience: (1) deliberate indifference; (2) gross negligence or arbitrariness that
indeed shocks the conscience; or (3) intent to cause harm."  See Magwood v. French, 478
F.Supp.2d 821, 829 (W.D.Pa. 2007)(citing Sanford v. Stiles, 456 F.3d 298, 306 (3d Cir.
2006)(*per curiam*)).

Thus, in the absence of any affirmative act, there can be no inquiry into the intent which accompanied that "act." Further, as this Court explained in *B.P.*,

> [u]nder the second element of the state created danger test, Plaintiffs must demonstrate that the state actor acted with a degree of culpability that shocks the conscience and sufficiently allege that the defendants acted in willful disregard for or with deliberate indifference to their safety. Morrow v. Balaski, 719 F.3d 160, 176 (3d Cir. 2013). Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' Bd. of Cty. Cmm'rs v. Brown, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

B.P. by & through L.P. v. North Allegheny School District, 579 F.Supp.3d at 729.

Plaintiff's allegations fail to meet this "stringent standard." In addressing certain constitutional challenges to several orders "issued by Pennsylvania's Governor and Secretary of Health to mitigate the spread of COVID-19 in Pennsylvania," this Court observed that the plaintiff faced a "'high bar.'" McCafferty v. Wolf, 2021 WL 1340002, *1 (W.D.Pa. 2021)(*quoting* South Allegheny Pittsburgh Restaurant Enterprises, LLC v. City of Pittsburgh, 806 F.App'x. 134, 142 (3d Cir. 2020)). In specifically addressing the "shock the conscience" standard, this Court said,

> [i]mportantly, while 'the meaning of this [shocks the conscience] standard varies depending on the factual context,' United Artists[ Theatre Circuit v. Twp. of Warrington], 316 F.3d [392,] at 400 [(3d Cir. 2003)], it 'encompasses "only the most egregious official conduct."' Chainey[ v. Street], 523 F.3d [200,] at 219 [(3d Cir. 2008)](*quoting* United Artists, 316 F.3d at 400). Conscience-shocking behavior has been described by the Supreme Court 'as "conduct intended to injure in some way unjustifiable by any government interest," and conduct "so 'brutal' and 'offensive' that it d[oes] not comport with traditional notions of fair play and decency."' S. Allegheny, 806 F.App'x at 142 (*quoting* Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) *and* Breithaupt v. Abram, 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957)). Indeed, the Third Circuit has declined to find that government action shocks the conscience

> where there were no 'allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggested conscience-shocking behavior.' <u>Chainey</u>, 523 F.3d at 220 (*citing* <u>Eichenlaub v. Twp. of Ind.</u>, 385 F.3d 274, 286 (3d Cir. 2004)).

<u>McCafferty v. Wolf</u>, 2021 WL 1340002, at \*9.

Here, Plaintiff alleges that "[t]he Defendants deprived Jamain Allen Stephens of his Constitutional rights by subjecting him and other students to a contagious, infectious virus, as pled herein.  The Defendants' actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to Jamain Allen Stephens' overall health, safety, and welfare, as pled herein."  <u>See</u> Complaint [ECF 1-1], at ¶¶ 111-112.  However, as set forth above, at the time in question, PennWest California was making efforts to reopen the campus following the disruption caused by the onset of Covid-19 in the Spring of 2020.  This scenario was taking place across the Commonwealth and across the country as communities, schools, universities and businesses alike sought to return to some state of pre-pandemic normalcy.  Plaintiff has not identified any specific conduct by any University Defendant that meets the high standard of conscience shocking behavior under the circumstances presented by this case.  Thus, Plaintiff cannot succeed on this claim because she cannot establish conduct that shocks the conscience.

Indeed, recent comments by another court, albeit in the context of a claim of deliberate indifference under the Eighth  Amendment, also illuminate this issue:

> Having reviewed these allegations, the Court finds that the complaint does not contain well-pleaded allegations that Defendant Ransom acted with deliberate indifference—*i.e.*, that he was subjectively aware of an excessive risk of harm to Plaintiff, which accompanied the conditions of Plaintiff's confinement in the RHU, but disregarded that risk.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837; <u>Muata v. Hicks</u>, No. 21-3210, 2022 WL 2526692, at \*2 (3d Cir. July 7, 2022) (unpublished)(concluding that the "[p]laintiffs' allegations failed to establish that [the defendants] were deliberately indifferent to the risks of COVID-19, and thus the District Court did not err in concluding that plaintiff failed to state a failure-to-

> protect claim").  Moreover, Defendant Ransom cannot be held liable for failing to eliminate all risk of Plaintiff contracting COVID-19.  See generally Hope v. Warden York Cnty. Prison, 972 F.3d 310, 330 (3d Cir. 2020)(stating, in the context of immigration detention, that the government's failure to contain COVID-19 and eliminate all risk of exposure did not establish deliberate indifference).

Taylor v. Ransom, 2023 WL 1348498, *6 (M.D.Pa. 2023).  See also Carroll v. George W. Hill Correctional Facility, 2022 WL 17539212, *11 (E.D.Pa. 2022)(citing and quoting Hope v. Warden York County Prison, 972 F.3d 310, 325-331 (3d Cir. 2020) (citations omitted).

Nor has Plaintiff alleged that the Defendants actions "were developed with any improper motive, were the result of corruption, self-dealing, or were otherwise 'intended to injure in some way unjustifiable by any government interest.'"  See McCafferty v. Wolf, 2021 WL 1340002, at *9.  Cf. B.P. by & through L.P. v. North Allegheny School District, 2022 WL 874283, *6 (W.D.Pa. 2022)(concluding on review of plaintiff's amended complaint that school board's "decision to create their own standard, rather than following the current standards from the CDC and Allegheny County Department of Health, does not present a degree of culpability that shocks the conscience or demonstrates a willful disregard or deliberate indifference to the students' safety under the state created danger analysis").  Thus, Plaintiff cannot satisfy this second element of the analysis.

### (3) the state and the plaintiff had such a relationship such that "the plaintiff was a foreseeable victim of defendant's acts," as opposed to a member of the public in general

Third, it must be shown that some relationship existed between the state and the plaintiff that renders plaintiff a foreseeable victim.  Initially, Plaintiff has not differentiated Mr. Stephens circumstances from any of the hundreds of student-athletes –or potentially thousands of students–living in off-campus student housing or attending PennWest California in August of

2020.  Indeed, Mr. Stephens cannot differentiate his relationship with PennWest California or the University Defendants from the public in general.  Allegations that Mr. Stephens was an enrolled student and member of the football program at PennWest California and that Mr. Stephens "had a contractual relationship with PennWest California, a state university," see Complaint [ECF 1-1], at ¶ 103, are not sufficient to establish the necessary relationship between the state and Mr. Stephens to support a state created danger claim.

Initially, although the Third Circuit formally recognized the special relationship theory[10] in D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1369 (3d Cir. 1992), the court found in that case that no special relationship existed by virtue of Pennsylvania's laws requiring compulsory school attendance and establishing in loco parentis authority of school officials, emphasizing the voluntary nature of school enrollment and attendance.  The basis for such a relationship would seemingly be more attenuated with students over the age of majority attending college or university.

Indeed, with respect to the student-plaintiffs' claim of a special relationship with their university in America's Frontline Doctors v. Wilcox, the court concluded that "Plaintiffs are not in custody; they are UC undergraduate and graduate students.  Plaintiffs do not allege that Defendants are their primary caretakers.  Thus, Plaintiffs cannot allege a substantive due process violation under the special relationship doctrine."  America's Frontline Doctors v. Wilcox, 2022 WL 1514038, at *10 (emphasis added).  In preface to this determination, the court observed that

---

[10]   Because Plaintiff attributes the harm that befell Mr. Stephens to state actors, the special relationship theory does not apply.  Cf. Black by Black v. Indiana Area School District, 985 F.2d 707, 713 (3d Cir. 1993)("A special relationship and a concomitant duty to protect against private actions of third parties arises when the State engages in an 'affirmative act of restraining the individual's freedom to act on his own behalf")(citations omitted)(emphasis added).  Nevertheless, some of the language in cases addressing the special relationship theory is instructive for purposes of determining whether an appropriate relationship exists between the plaintiff and the state in a state created danger case.

> [t]he special-relationship exception applies when a state 'takes a person into its custody and holds him there against his will.' Patel[ v. Kent Sch. Dist.], 648 F.3d [965,] at 972 [(9th Cir. 2011)].  The types of custody triggering the exception are 'incarceration, institutionalization, or other similar restraint of personal liberty.' Id. (citations omitted.)  'When a person is placed in these types of custody, we allow due process claims against the state for a fairly simple reason:  a state cannot restrain a person's liberty without also assuming some responsibility for the person's safety and well-being."  Id. (citations omitted.)  The state's constitutional duty arises 'not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which [the State] has imposed on his freedom.'  Id. (citations omitted.)  The special-relationship exception does not apply when a state fails to protect a person who is not in custody. Id. (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195-202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).  Even when school attendance is mandatory, parents –not the state– remain the student's primary caretakers. (Patel at 973.)

America's Frontline Doctors v. Wilcox, 2022 WL 1514038, at *10.

Generally, "[e]xamples of special relationship situations include incarcerated individuals, Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and individuals involuntarily detained in mental institutions.  Youngberg [v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)]."  Black by Black v. Indiana Area School District, 985 F.2d 707, 713 (3d Cir. 1993).  See Leonard v. Owen J. Roberts School District, 2009 WL 603160, *5 (E.D.Pa. 2009)(no special relationship between public schools and students have been found because students remain in the custody and control of their parents); Allen v. Susquehanna Township School District, 2006 WL 1071769, *5 (M.D.Pa. 2006)(same).

Finally, while no case has been found in the Third Circuit where a contractual relationship has sufficed for this element, a district court in the Tenth Circuit has observed that "the existence of a contract with the state is insufficient to support the existence of a symbiotic relationship."  See Dahn v. Adoption Alliance, 164 F.Supp.3d 1294, 1306 (D.Colo. 2016), rev'd

*and remanded sub nom.* <u>Dahn v. Amedei</u>, 867 F.3d 1178 (10th Cir. 2017)(finding district court should have awarded qualified immunity on special-relationship claims asserted by plaintiff) (*citing* <u>Gallagher</u>, 49 F.3d at 1451; <u>Freeman v. Arapahoe House</u>, 2014 WL 3864307, *6 (D.Colo. 2014)("it is well established that government contracts...do not establish a symbiotic relationship").

Consequently, Mr. Stephens was never in state custody, nor was he compelled or mandated by the University Defendants to attend PennWest California. <u>See</u> Complaint [ECF 1-1], at ¶ 31 ("Jamain returned to PennWest California for his senior year on or around August 17, 2020"). Thus, there was never a sufficient relationship between PennWest California or any University Defendant and Mr. Stephens that would establish a predicate for her substantive due process claim. <u>Cf.</u> <u>Rew v. LaGrande School Dist</u>rict, 2004 WL 1698166, 4 (D.Or. 2004)("It is undisputed, however, that [plaintiff] was never in state custody. The special-relationship exception, therefore, does not apply"). Plaintiff cannot satisfy this prong of the analysis.

### *(4) the official affirmatively used his authority "in a way that created danger to the citizen or that rendered the citizen more vulnerable to danger" than had he never acted*

Finally, Plaintiff must be able to establish that a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Here again, there is no allegation in the Complaint of any specific affirmative act or conduct by any particular University Defendant that endangered Mr. Stephens or made him more vulnerable to danger than had no action been taken at all. Again, the bulk of the allegations assert that the University Defendants failed to act; however, such failure cannot support a claim based on a theory of state-created danger. <u>See</u> <u>Bright v. Westmoreland County</u>, <u>supra</u>.

As this Court explained in some detail in a different context:

> To reiterate, 'the governing rule is that there can be no liability in the absence of an affirmative exercise of state authority.' <u>Bright</u>, 443 F.3d at 284.   Although Plaintiffs allege that Defendant Borough 'affirmatively' adopted a practice, custom or policy of allowing visitors access to the municipal building without being adequately screened for weapons, the gravamen of their Amended Complaint, as Defendant Borough notes, is inadequate screening of visitors who enter the municipal building, which implicates the Borough's alleged failure to act.   Plaintiffs have attempted to convert the Borough's alleged inaction (that is, failing to screen for weapons) into an affirmative act creating a dangerous situation for Plaintiffs by claiming that an alleged practice, custom or policy concerning same was 'affirmatively adopted.'   The Third Circuit Court of Appeals has cautioned, however, that 'merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct,' <u>Morrow v. Balaski</u>, 719 F.3d 160, 179 (3d Cir. 2013), and therefore 'has repeatedly rejected attempts by plaintiffs to redefine clearly passive inaction as affirmative acts.' <u>Lansberry v. Altoona Area Sch. Dist.</u>, 318 F.Supp. 3d 739, 755 (W.D.Pa. 2018)(internal quotation marks and citations omitted).   Moreover, it is not enough for the state to exercise its authority, there must also be 'a direct causal relationship between the affirmative act of the state and the plaintiff's harm,' such that the action 'was the "but for cause" of the danger faced by the plaintiff.' <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 432 (3d Cir. 2006).   Here, Plaintiffs have failed to plead facts to support an inference that Defendant Borough took an affirmative action, as opposed to failing to act, which was the but for cause of the danger they faced.   Given that Plaintiffs have failed to plausibly allege an affirmative use of state authority that created a danger to them, the state-created danger claim alleged in Count IV will be dismissed without prejudice to amendment by Plaintiffs.

<u>Szerensci v. Shimshock</u>, 2021 WL 4480172, *9 (W.D.Pa. 2021).

Thus, Plaintiff's failure to satisfy all of the necessary elements of a state created danger claim necessitates the dismissal of this claim.

**B.   Right to Human Dignity.**   Plaintiff cannot proceed with her claim asserting a violation of a right to human dignity.   Courts in this jurisdiction have declined to countenance

claims involving a right to human dignity outside claims related to incarceration, confinement or

other custodial relationship.  As this Court explained at some length:

> Counts I and IV allege violations of Plaintiff's 'right to human dignity' under the Fourteenth Amendment.  The School District Defendants contest the very existence of an actionable 'right to human dignity' under the Fourteenth Amendment, at least in this context.  Plaintiff does not identify in his briefing any binding authority recognizing a separate and distinct claim based on the 'right to human dignity' outside the prisoner context, and particularly not in school sports cases.

> This thread of Fourteenth Amendment substantive jurisprudence exists, but it does so principally in coerced custodial or penal settings.  While Plaintiff does cite several cases that use the words 'human dignity,' each is inapposite to the facts of this case, since each deals with conditions or actions taken with regard to penal incarceration.  See ECF No. 15, at 6-7 (citing Rochin v. California, 342 U.S. 165, 174, 72 S.Ct. 205, 96 L.Ed. 183 (1952)(finding due process violation when drug capsules obtained from forcibly pumping an inmate's stomach were admitted to convict the defendant)); Yoder v. Cumberland Cnty., 278 A.2d 379, 389 (Me. 1971)(incarceration without due process affronts human dignity); Lamb v. Hutto, 467 F.Supp. 562, 567 (E.D.Va.1979)(recognizing that "conduct that can be classified as offensive to human dignity can constitute a deprivation of liberty" and concluding a prisoner's allegations that he was continuously beaten, kicked, and dragged throughout the building were offensive). Mr. Dorley does cite E.N. v. Susquehanna Twp. Sch. Dist., No. 09–1727, 2010 WL 4853700, at *6 (M.D.Pa. Nov. 23, 2010), which does not mention 'human dignity' but instead only states that '[t]he Fourteenth Amendment protects individuals from arbitrary government interference with certain protected liberty interests.  An individual's interest in bodily integrity—to be free from physical abuse or unwanted medical treatment by government officials—is among the fundamental liberty interests protected by the Fourteenth Amendment.'

Dorley v. South Fayette Township School District, 129 F.Supp.3d 220, 229-230 (W.D.Pa.

2015)(citation to record and footnote omitted).  See also Fiedler v. Stroudsburg Area School

District, 427 F.Supp.3d 539, 549 (M.D.Pa. 2019)(relying on Dorley to dismiss claim for

violation of right to human dignity with prejudice); B.D. v. Downingtown Area School District,

2016 WL 3405460, *2 n. 3 (E.D.Pa. 2016)(observing that "§ 1983 claims involving the right to human dignity have generally only been recognized in the prisoner context").

Nothing within Plaintiff's present allegations serve to compel a different result in this case. Moreover, assuming this Court would determine that such a claim is viable or that it merges with Plaintiff's state created danger claim, the absence of proof of conscience shocking behavior on the part of any University Defendant –as argued above– requires its dismissal in any event. Accordingly, based on the foregoing, Plaintiff is unable to establish a claim under the state created danger doctrine. Counts V and VI of the Complaint must, therefore, be dismissed as to the University Defendants.

## IV. CONCLUSION

WHEREFORE, it is respectfully requested that this motion be granted and that Plaintiff's Complaint [ECF 1-1] be dismissed and/or that the University Defendants be dismissed from this action.

Respectfully submitted,

MICHELLE A. HENRY
Acting Attorney General

_____s/ Scott A. Bradley_____
Scott A. Bradley
Senior Deputy Attorney General
Attorney I.D. No. 44627

Office of Attorney General
Litigation Section
1521 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Karen M. Romano
Chief Deputy Attorney General

Phone: (412) 565-3586
Fax:    (412) 565-3019

Date:  February 17, 2023