IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATELYN D. EDWARDS,<br><br>        Plaintiff,<br><br>  v.<br><br>CALIFORNIA UNIVERSITY OF PENNSYLVANIA, PENNSYLVANIA WESTERN UNIVERSITY, GERALDINE M. JONES, STUDENT ASSOCIATION, INC., GREYSTAR DEVELOPMENT SERVICES, LLC, GREYSTAR STUDENT LIVING MANAGEMENT SERVICES, LLC, JARED SHINER, GARY W. DUNN, KAREN HJERPE,<br><br>       Defendants. | 2:23-CV-00086-CCW |

## MEMORANDUM OPINION

This case arises from the death of Jamain Allen Stephens, a scholarship football player at California University of Pennsylvania (now known as Pennsylvania Western University California or "PennWest California"), from COVID-19. ECF No. 1-1 ¶¶ 1–2, 8–10, 19, 55. The administrator of Mr. Stephens' estate, Katelyn D. Edwards, brings federal and state law claims alleging that Defendants—the school, entities involved in its off-campus housing, and several associated individuals—should have prevented Mr. Stephens' death.

Before the Court are three Motions to Dismiss filed by (1) PennWest California, Geraldine M. Jones, Gary W. Dunn, and Karen Hjerpe (collectively, the "University Defendants"), ECF No. 15, (2) Student Association, Inc. ("SAI"), ECF No. 9, and (3) Greystar Student Living Management Services, LLC ("Greystar Student Living"), ECF No. 11. For the following reasons,

the Court will GRANT IN PART the Motions, and dismiss Ms. Edwards' federal claims, each of which alleges a violation of Mr. Stephens' substantive due process rights, with leave to amend.

Because dismissal of Ms. Edwards' federal claims would be grounds for declining to exercise supplemental jurisdiction over her state law claims, *see* 28 U.S.C. § 1367(c)(3), the Court will DEFER consideration of those claims until Ms. Edwards files an amended complaint, *see, e.g.*, *Nichols v. Burns*, No. 15-cv-0527, 2015 WL 8007398, at *4 (E.D. Pa. Dec. 7, 2015) (dismissing federal claims and deferring consideration of supplemental jurisdiction until after receiving amended complaint).[1]  Accordingly, the Court will DENY IN PART Defendants' Motions, insofar as they are directed at Ms. Edwards' state law claims, without prejudice to Defendants' raising the same arguments after Ms. Edwards files an amended complaint.

## I.    Background

As alleged in the Complaint, Mr. Stephens died shortly after returning to PennWest California for his senior year in August of 2020.  ECF No. 1-1 ¶¶ 31, 40–55.  At the time, Mr. Stephens lived in a four-person suite with a single roommate in Vulcan Village, an off-campus housing facility operated by PennWest California, SAI, and Greystar Student Living.  *Id.* ¶¶ 32–

---

[1] Under § 1367(c)(3), this Court has the discretion to decline to exercise supplemental jurisdiction over Ms. Edwards' state law claims if it has dismissed "all claims over which it has original jurisdiction."  Because the parties here are not completely diverse, the Court has original jurisdiction over only Ms. Edwards' federal claims.  *See* 28 U.S.C. §§ 1331–1332.  Thus, dismissing Ms. Edwards' federal claims would bring this case within the ambit of § 1367(c)(3).

The Court recognizes that two defendants—Greystar Development Services, LLC and Jared Shiner—have not appeared and thus have not moved to dismiss the federal claims against them.  Nevertheless, Ms. Edwards' claims against those two defendants appear to be coextensive with the claims against the remaining defendants, such that the Court would be inclined to sua sponte dismiss the federal claims against those defendants if Ms. Edwards fails to sufficiently plead them in an amended complaint.  *See Zaslow v. Coleman*, 103 F. Supp. 3d 657, 664 (E.D. Pa. 2015) (court may dismiss a claim sua sponte where "the inadequacy of the complaint is apparent as a matter of law" (internal quotation marks omitted)).  Before doing so, however, the Court would grant Ms. Edwards an opportunity "to respond to the perceived inadequacies of the complaint" as to those two defendants.  *Id.*

35.[2]  Mr. Stephens allegedly developed symptoms of COVID-19 the week of August 27, 2020, one day after his mother overheard his roommate coughing while she and Mr. Stephens were on the phone.  *Id.* ¶¶ 39–40.  When Mr. Stephens' symptoms did not improve, his mother took him to an urgent care facility, where he was diagnosed with pneumonia and directed to the Emergency Room at Shadyside Hospital.  *Id.* ¶¶ 41–43.  Mr. Stephens went to the hospital, where on August 31, 2020, he was diagnosed with COVID-19.  *Id.* ¶ 44.  Over the next week his condition worsened, and he died from COVID-19 complications on September 8, 2020. *Id.* ¶¶ 51–55.

The gravamen of Ms. Edward's Complaint, originally filed in state court, is that Defendants could have and should have prevented Mr. Stephens' death.  For one thing, she faults the University Defendants for their "football first" mentality and claims that they should have prioritized student wellbeing over football and suspended the 2020 season.  *Id.* ¶¶ 99–102.  Ms. Edwards also claims that in choosing to go ahead with the football season, Defendants failed to adequately protect against the spread of COVID-19 amongst football players and amongst students living at Vulcan Village.  *See, e.g.*, *id.* ¶ 74.  For example, she alleges that Vulcan Village had inadequate ventilation, inadequate room for social distancing, and inadequate room to separate students who tested positive for COVID-19.  *Id.* ¶¶ 67–68.  Ms. Edwards further criticizes Defendants for failing to establish or enforce adequate policies and procedures to prevent the spread of COVID-19, including masking, screening, and social distancing.  *Id.* ¶¶ 74, 84.  Based on these allegations, Ms. Edwards brings six federal claims under 42 U.S.C. § 1983, each asserting violations of Mr. Stephens' substantive due process rights (Counts Five, Six, Seven, Fourteen,

---

[2] The Court uses the phrase "operated by" loosely, because the Complaint does not clarify the precise relationship between PennWest California, SAI, Greystar, and Vulcan Village.  The details of that relationship are not material to the Court's reasoning here.

Sixteen, and Seventeen), and ten state law claims for wrongful death, survival, and willful misconduct.

Defendants removed this case to federal court on January 18, 2023. ECF No. 1. SAI and Greystar Student Living separately moved to dismiss all claims against them on January 25, 2023. ECF Nos. 9, 11. The University Defendants followed suit on February 17, 2023. ECF No. 15. Briefing on all three motions is now complete and they are ripe for adjudication. ECF Nos. 19, 20, 21, 22, 23. Notably, however, in her response to Greystar Student Living's Motion, Ms. Edwards agreed to dismiss all the counts against Greystar Student Living except for her state law claims for survival and wrongful death. ECF No. 20 at 5. Because there are thus no further federal claims against Greystar Student Living, the Court will address only the University Defendants' and SAI's arguments here.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

### III.   Analysis

The University Defendants and SAI lodge several arguments for dismissing Ms. Edwards' federal claims, but the Court finds it necessary to address only one—namely, their argument that Ms. Edwards has failed to plausibly allege conduct that "shocks the conscience."  Because conscience-shocking conduct is an element of each of her federal claims—which are predicated on substantive due process violations—and because Ms. Edwards has failed to plausibly allege such conduct, she has failed to state a claim under Rule 12(b)(6).

As mentioned, Ms. Edwards' federal claims arise under § 1983, which establishes a statutory cause of action to vindicate constitutional violations. To state a claim under § 1983, the plaintiff must plead that they were—or in this case, that Mr. Stephens was—deprived a constitutional right by a person acting "under color of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). Thus, "[t]he first step in evaluating a § 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). If so, the Court then must address the "under color of" element, which "requires that one liable under 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

Here, Ms. Edwards predicates her § 1983 claims on violations of Mr. Stephens' substantive rights under the Due Process Clause of the Fourteenth Amendment. She asserts three recognized theories of liability. First, Ms. Edwards presents a "state-created danger" theory, an exception to the general rule that "the Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006). Under a state-created-danger theory, the defendant may be liable for affirmative conduct that exposed the victim to an increased risk of the harm they ultimately suffered. *Id.* at 282. Second, Ms. Edwards asserts a "special relationship" theory, another exception to the no-right-to-government-aid rule. The special-relationship theory recognizes that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Torisky v. Schweiker*, 446 F.3d 438,

444 (3d Cir. 2006) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)).  Third, Ms. Edwards claims an "injury to human dignity," which may be viable where "the outrageous acts of government" cause harm.  *Alt v. Shirey*, No. 11-0468, 2012 WL 726579, at *7 (W.D. Pa. Feb. 7, 2012) (Lenihan, M.J.), *report and recommendation adopted*  No. 2:11cv468, 2012 WL 726593 (W.D. Pa. Mar. 1, 2012) (Cercone, J.);  *see Rochin v. California*, 342 U.S. 165, 174 (1952).[3]

Under each of these theories, Ms. Edwards must allege conduct that "shocks the conscience."  *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015)  ("The shocks-the-conscience test applies regardless of the theory upon which the substantive due process claim is premised.") (collecting cases);  *see Mears v. Connolly*, 24 F.4th 880, 883–84 (3d Cir. 2022) (state-created danger);  *Nicini*, 212 F.3d at 810 (special relationship);  *Alt*, 2012 WL 726579, at *7 (human dignity) (collecting cases).  This common element stems from the understanding that substantive due process claims are actionable only in cases involving "the most egregious official conduct."  *Lewis*, 523 U.S. at 846.  Conduct that is "arrogant, dismissive, callous or harsh" is insufficient;  instead, a plaintiff must allege "conduct that is so brutal and offensive that it does not comport with traditional ideas of fair play and decency."  *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 228 (W.D. Pa. 2015) (Hornak, J.) (cleaned up).

Notably, the shocks-the-conscience inquiry is circumstantial.  *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (citing *Lewis*, 523 U.S. at 850).  Thus, conduct is less likely to shock the conscience when the State confronts "highly unusual and unique

---

[3] The Court notes that even *Alt*, the case that Ms. Edwards relies upon most heavily, acknowledges that there is no "special relationship" between a school and students for the purposes of analyzing substantive due process because students are not "restrained from leaving school during the day." 2012 WL 726579 at *12.  By extension, this holding, supported by Third Circuit precedent, would seem to preclude Ms. Edwards' special relationship theory in the university context.  *See, e.g.*, *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1370–73 (3d Cir. 1992) (en banc).  Nevertheless, the Court need not reach the issue.

circumstances." *Id.* On the other hand "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). Accordingly, "in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient" to shock the conscience. *Id.* Ms. Edwards argues that the applicable standard here is deliberate indifference, and the Court will assume that she is correct because Defendants have not challenged the point. "To establish deliberate indifference, [Ms. Edwards] must show the [Defendants] knew of *and disregarded* an excessive risk to [Mr. Stephens'] health and safety." *Hope*, 972 F.3d at 329.

According to Ms. Edwards, Defendants exhibited deliberate indifference by "requiring" football players like Mr. Stephens to return to campus and live in housing like Vulcan Village despite the threat posed by COVID-19. ECF No. 19 at 9–10. She alleges that Vulcan Village "was not equipped to offer proper protections to students from COVID-19 due to the existence of shared spaces where students were in contact with others and could not social distance," had "inadequate ventilation," and had inadequate space to separate students who tested positive for COVID-19. ECF No. 1-1 ¶ 67. Short of cancelling the football season entirely, Ms. Edwards alleges that Defendants should at least have taken further precautions against the spread of COVID-19, such as screening football players and Vulcan Village residents for the disease, requiring negative tests before a student could move into Vulcan Village or participate in football activities, and requiring masking and social distancing. *Id.* ¶ 74. Ms. Edwards argues that other school activities and all classes were held virtually and that requiring football players to return to campus was part of a conscience shocking "football first" mentality. *Id.* ¶ 99; ECF No. 19 at 10.

These allegations, together with other facts relied on by Ms. Edwards, fail to plausibly establish deliberate indifference and, thus, conduct that shocks the conscience. At the outset, the

Court makes two observations. First, Third Circuit precedent teaches that an assessment of deliberate indifference in responding to the COVID-19 pandemic must account for the "highly unusual and unique circumstances" of that context. *Hope*, 972 F.3d at 330. Ms. Edwards' allegations regarding the disease back that up. She notes that the World Health Organization declared the disease a pandemic in March 2020, that COVID-19 "is very contagious and quickly spread across the world," and that approximately 160,000 people in the United States had died of COVID-19 as of August 2020. ECF No. 1-1 ¶¶ 22, 26, 28. Second, despite Ms. Edwards' argument that Defendants "required" Mr. Stephens to return to campus, the Complaint clarifies that at most Mr. Stephens "was required to be in a housing complex and school . . . if he wanted to maintain his spot on PennWest California's football team and his football scholarship." ECF No. 1-1 ¶ 99. Thus, even taking the allegations in the light most favorable to Ms. Edwards, while Mr. Stephens may have felt significant pressure to return to campus to maintain his scholarship, Defendants did not "require" him to do so. *Cf. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d at 1371 (students were not compelled to attend classes despite compulsory schooling law and "financial reasons" that might limit what school the student can attend); *Fennell v. Wetzel*, No. 4:22-CV-00880, 2023 WL 1997116, at *5 (M.D. Pa. Feb. 14, 2023) (plaintiff was not "forced" to receive COVID-19 vaccine despite the privileges he would have lost by choosing not to be vaccinated).

With those observations in mind, the facts Ms. Edwards relies on fail to establish that Defendants "disregarded" the known or obvious risks that COVID-19 posed. Indeed, Ms. Edwards acknowledges that Defendants took steps to prevent the spread of the disease among students. For one thing, she concedes that PennWest California held classes remotely during the spring and fall semesters of 2020 and prohibited students who lived in dorms from returning to campus for the

fall semester.  ECF No. 1-1 ¶ 30;  ECF No. 19 at 10.[4]  Indeed, Ms. Edwards concedes that at the time that Mr. Stephens returned to campus "the football team was not formally practicing because of COVID-19 protocols" and instead was "working out in an organized fashion with five to six people at a time." ECF No. 1-1 ¶ 38.  She also alleges vaguely that Defendants failed to "enforc[e]" or "modif[y] policies and procedures designed to prevent COVID-19 transmission," which presupposes that such policies were in place.  *Id.* ¶ 74(g).

Reduced to its core, Ms. Edwards' claim is that Defendants should have responded differently and done more to prevent the spread of COVID-19.  Such complaints, however, cannot establish deliberate indifference, at least considering the measures—though perhaps imperfect—that Defendants *did* take to reduce the spread of COVID-19.  *See Hope*, 972 F.3d at 330;  *see also Jones v. Cnty. of Allegheny*, No. 21-1094, 2022 WL 2806779, at *6 (W.D. Pa. June 24, 2022) (Lenihan, M.J.) ("Simply because the execution of Covid-19 protocols may have been nonoptimal at times, the alleged deficiencies fall well short of evidencing deliberate indifference by the named Defendants."), *report and recommendation adopted*, No. 21-1094, 2022 WL 2803111 (W.D. Pa. July 18, 2022) (Hardy, J.);  *Porter v. Allegheny Cnty.*, No. 20-1588, 2023 WL 2586037, at *11 (W.D. Pa. Mar. 21, 2023) (Dodge, M.J.) (collecting cases rejecting substantive due process claims addressing COVID-19 exposure in prisons).

---

[4] The fact that PennWest California held classes virtually during the fall 2020 semester is not specifically pleaded in the Complaint, but the Court will consider it based on Ms. Edwards' concession.  *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006) ("Judicial admissions are concessions in pleadings or briefs that bind the party who makes them.");  *Smith v. Gatewood*, No. 2:11-cv-01531, 2012 WL 1463373, at *3 (W.D. Pa. Apr. 27, 2012) (Hornak, J.) (granting motion to dismiss based on concession in opposing party's brief).  Otherwise, the Court has declined to consider the numerous documents and unpleaded facts that Ms. Edwards has referenced in her opposition briefs.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").  Ms. Edwards is free to include those facts in her amended pleading.

A final consideration bolsters the Court's conclusion that Ms. Edwards has failed to plead a § 1983 claim predicated on substantive due process.  As now-Chief Judge Hornak observed in *Dorley*, "[t]he Supreme Court expects lower federal courts to act as gatekeepers when it comes to defining or expanding substantive due process protections."  Thus, the Court must act with caution before expanding substantive due process protections into a novel context.  129 F. Supp. 3d at 227; *id.* ("[T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharte[]d area are scarce and open-ended.  The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).  Ms. Edwards has not directed the Court to any case where a court held that an allegedly substandard response to COVID-19 in the college or university context gave rise to a viable substantive due process claim.  Though not dispositive, this fact counsels in favor of granting Defendants' Motions because this Court has an obligation to "preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to . . .  a font of tort law." *Id.* at 227 (quoting *Collins*, 503 U.S. at 847 n.8).

Because Ms. Edwards has not plausibly alleged conduct that shocks the conscience, she has failed to state a claim under § 1983 predicated on a violation of Mr. Stephens' substantive due process rights.  Accordingly, the Court will dismiss Ms. Edwards' federal claims against the University Defendants and SAI.

**IV.    Conclusion**

For the foregoing reasons, the Court will DISMISS Counts Five, Six, and Seven[5] as to the University Defendants and SAI.  However, the Court will grant Ms. Edwards leave to amend her Complaint to respond to the defects addressed here and Defendants' other arguments.  In addition, based on Ms. Edwards' agreement with Greystar Student Living, the Court will DISMISS WITH PREJUDICE Counts Ten through Sixteen as to Greystar Student Living.  Finally, the Court will defer ruling on whether to exercise supplemental jurisdiction over Ms. Edwards' remaining state law claims until Ms. Edwards has amended her Complaint.  *See supra* at 1 n.2.  Accordingly, the Court will DENY Defendants' Motions insofar as they are directed at Ms. Edwards' state law claims, without prejudice to Defendants' raising the same arguments after Ms. Edwards files an amended complaint.

DATED this 14th day of April, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[5] Count Seven is a § 1983 claim against only PennWest California pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Because Ms. Edwards "ha[s]not shown a constitutional violation, [she] cannot make out a *Monell* claim."  *Knellinger v. York St. Prop. Dev., LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014).