IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATELYN D. EDWARDS, | |
| Plaintiff, | 2:23-CV-00086-CCW |
| v. | |
| CALIFORNIA UNIVERSITY OF PENNSYLVANIA, PENNSYLVANIA WESTERN UNIVERSITY, GERALDINE M. JONES, STUDENT ASSOCIATION, INC., GREYSTAR DEVELOPMENT SERVICES, LLC, GREYSTAR STUDENT LIVING MANAGEMENT SERVICES, LLC, JARED SHINER, GARY W. DUNN, KAREN HJERPE, | |
| Defendants. | |

## OPINION

Jamain Allen Stephens was a scholarship football player at California University of Pennsylvania (now known as Pennsylvania Western University California or "PennWest California"). He died of COVID-19 shortly after returning to campus for the Fall 2020 semester. The administrator of Mr. Stephens' estate, Katelyn D. Edwards, alleges that Defendants—the school, entities involved in its off-campus housing, and associated individuals—should have prevented Mr. Stephens' death. Several of Ms. Edwards' claims are predicated on alleged violations of Mr. Stephens' federal substantive due process rights. The remainder are predicated on state law.

In a prior opinion, the Court dismissed Ms. Edwards' substantive due process claims with leave to amend, holding that she had failed to allege an essential element of those claims: conduct by Defendants that "shocks the conscience." ECF No. 24 at 5, 12. The Court also deferred

consideration of whether to exercise supplemental jurisdiction over Ms. Edwards' state law claims given the deficient allegations in the claims raising a federal question. *Id.* at 2 n.1.

Ms. Edwards filed an Amended Complaint on April 28, 2023. ECF No. 26. Now before the Court are three Motions to Dismiss filed by: (1) PennWest California, Geraldine M. Jones, Gary W. Dunn, and Karen Hjerpe (collectively, the "University Defendants"), ECF No. 29; (2) Student Association, Inc. ("SAI"), ECF No. 27; and (3) Greystar Student Living Management Services, LLC ("Greystar Student Living"), ECF No. 28. Because Ms. Edwards has again failed to plausibly allege conduct by Defendants that "shocks the conscience," the Court will **GRANT IN PART** those motions and **DISMISS WITH PREJUDICE** Ms. Edwards' substantive due process claims. The Court will again **DEFER** consideration of Ms. Edwards' state law claims, pending resolution of the claims against the sole defendant yet to appear in this action—Jared Shiner. Therefore, the Court will **DENY WITHOUT PREJUDICE** the motions to the extent that they target Ms. Edwards' state law claims.

I.     **Background**

   A.     **Factual Allegations**

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic, prompting schools across the country to transition to remote learning for the Spring 2020 semester. ECF No. 26 ¶ 28. PennWest California, where Mr. Stephens had been enrolled since 2017 and had a scholarship to play on the football team, was one of those schools. *Id.* ¶¶ 21, 28, 31.

PennWest California announced on June 15, 2020 that it planned to reopen for the Fall 2020 semester. *Id.* ¶ 31. The reopening plan included a "revised academic calendar," hybrid-learning options, and protocols for masking, cleaning, and social distancing. *Id.* ¶ 32. About three

weeks later, however, the school changed course, announcing that the school would, in Ms. Edwards' words, "operate remotely during the Fall 2020 semester due to the rise of COVID-19 cases in Pennsylvania and throughout the United States." *Id.* ¶ 33.  Although dormitories would be closed for the Fall 2020 semester, students living in off-campus housing "were permitted to return to campus." *Id.* ¶ 35.

Mr. Stephens returned to campus on August 17, 2020, to live in an off-campus residence called "Vulcan Village." *Id.* ¶ 42.  Vulcan Village is owned by Greystar Student Living and operated by PennWest California, which uses SAI for leasing services. *Id.* ¶¶ 36–37.  When Mr. Stephens arrived, he retrieved his keys from a designated tent on campus. *Id.* ¶ 43.  According to Ms. Edwards, "personnel at the tent were not wearing masks, taking temperatures of students, or testing students for COVID-19." *Id.* ¶ 43.  She further alleges that PennWest California "did nothing to determine whether the incoming students had been in contact with an individual who was COVID-19 positive or if the students were experiencing COVID-19 related symptoms." *Id.* ¶ 44.

Before participating in football team activities, however, Mr. Stephens—like all student athletes—was required to complete a COVID-19 screen. *Id.* ¶ 57.  At the time, "the football team was not formally practicing because of COVID-19 protocols" and was instead working out informally, "five to six people at a time." *Id.* ¶ 55.

In Vulcan Village, Mr. Stephens lived in a four-person suite with one other roommate. *Id.* ¶¶ 46, 50.  Mr. Stephens developed COVID-19 symptoms the week of August 27, 2020, a day after his mother overheard his roommate coughing while she and Mr. Stephens were on the phone. *Id.* ¶¶ 58–59.  Mr. Stephens' symptoms did not improve, and his mother took him to an urgent care facility and then an emergency room, where he was diagnosed with COVID-19. *Id.* ¶¶ 60–63.  His

condition worsened over the following week, and he died of COVID-19 complications on September 8, 2020.  *Id.* ¶¶ 65–74.

On December 18, 2020, PennWest California announced that it would reopen for the Spring 2021 semester.  *Id.* ¶ 77.  Ms. Edwards alleges that the "Spring 2021 semester plans for prevention and/or mitigation of COVID-19 were far more extensive than PennWest California's Fall 2020 COVID-19 initiatives."  *Id.* ¶ 78.  Those plans included protocols for masking, social-distancing, and daily health screening.  *Id.* ¶¶ 79–84.

### B.   Procedural History

Ms. Edwards filed her original complaint in Pennsylvania state court.  ECF No. 1-1.  She asserted sixteen claims, generally alleging that Defendants could and should have prevented Mr. Stephens' death.  *See generally id.*  In six of her claims, brought under 42 U.S.C. § 1983, Ms. Edwards alleged violations of Mr. Stephens' substantive due process rights.  *See generally* ECF No. 1-1.  In the remaining claims, she alleged violations of state law under theories of wrongful death, survival, and willful misconduct.  *See generally id.*  Defendants removed the case to federal court on January 18, 2023, ECF No. 1, and thereafter SAI, Greystar Student Living, and the University Defendants filed separate motions to dismiss, ECF Nos. 9, 11, 15.

On April 14, 2023, the Court granted in part and denied in part those motions.  ECF Nos. 24–25.  First, the Court dismissed Ms. Edwards' § 1983 claims against SAI and the University Defendants, holding that she had failed to plausibly allege conduct that "shocks the conscience," as required to establish a substantive due process violation.  ECF No. 24 at 5–11.  The Court granted Ms. Edwards leave to amend.  *Id.* at 12.  Second, the Court dismissed several claims against Greystar Student Living, including the § 1983 claims against it, pursuant to an agreement between it and Ms. Edwards.  *Id.*  Third, the Court deferred consideration of whether to exercise

supplemental jurisdiction over Ms. Edwards' remaining state law claims and therefore denied the motions to dismiss without prejudice insofar as they targeted the state claims.  *Id.* at 2 n.1, 12.

Ms. Edwards filed her seven-count Amended Complaint on April 28, 2023.  ECF No. 26. Counts I, II, VI, and VII are state law claims for survival and wrongful death against all Defendants in certain combinations.  *Id.* ¶¶ 88–111, 148–60.  Counts III, IV, and V are § 1983 claims against the University Defendants and/or SAI, predicated on alleged violations of Mr. Stephens' substantive due process rights.  *Id.* ¶¶ 112–47.  The Amended Complaint prompted a new round of Motions to Dismiss by SAI, the University Defendants, and Greystar Student Living.  ECF Nos. 27–29.  Those motions are now ripe for adjudication.  *See* ECF Nos. 32–35, 38–41.

## II.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

## III.    Analysis

SAI, the University Defendants, and Greystar Student Living move to dismiss all the claims against them.   The Court, however, will again address the substance of only Ms. Edwards' § 1983 substantive due process claims.   Because she has failed to plead conduct that shocks the conscience—an element of the alleged violations of Mr. Stephens' substantive due process rights—the Court will dismiss those claims.  As for Ms. Edwards' state law claims, the Court will defer consideration of whether to exercise supplemental jurisdiction over them as explained below.

A.    **The Court Will Dismiss Ms. Edwards' § 1983 Claims**

To state a claim under § 1983, Ms. Edwards must plead that Mr. Stephens was deprived a constitutional right by a person acting "under color of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). "The first step in evaluating a § 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).

Here, Ms. Edwards rests her § 1983 claims on violations of Mr. Stephens' substantive rights under the Due Process Clause of the Fourteenth Amendment. She asserts three recognized theories of liability: "state-created danger," "special relationship," and "injury to human dignity." The first two theories operate as exceptions to the general rule that "the Due Process Clause imposes no affirmative duty to protect a citizen," and are applicable in certain circumstances where state actors either affirmatively increased a risk of harm or assumed responsibility for a citizen's safety. *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006); *Torisky v. Schweiker*, 446 F.3d 438, 444 (3d Cir. 2006)). An "injury to human dignity" theory, by contrast, may be viable where "the outrageous acts of government" cause harm. *Alt v. Shirey*, No. 11-0468, 2012 WL 726579, at *7 (W.D. Pa. Feb. 7, 2012) (Lenihan, M.J.), *report and recommendation adopted* No. 2:11cv468, 2012 WL 726593 (W.D. Pa. Mar. 1, 2012) (Cercone, J.); *see Rochin v. California*, 342 U.S. 165, 174 (1952).

To proceed on any of these theories, Ms. Edwards must plausibly allege conduct that "shocks the conscience." *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015) ("The shocks-the-conscience test applies regardless of the theory upon which the substantive due process claim

is premised.") (collecting cases); *see Mears v. Connolly*, 24 F.4th 880, 883–84 (3d Cir. 2022) (state-created danger); *Nicini*, 212 F.3d at 810 (special relationship); *Alt*, 2012 WL 726579, at *7 (human dignity) (collecting cases).  This common element stems from the understanding that substantive due process claims are actionable only in cases involving "the most egregious official conduct." *Lewis*, 523 U.S. at 846.  Conduct that is "arrogant, dismissive, callous or harsh" is insufficient;  instead, a plaintiff must allege "conduct that is so brutal and offensive that it does not comport with traditional ideas of fair play and decency." *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 228 (W.D. Pa. 2015) (Hornak, J.) (cleaned up).

Whether conduct shocks the conscience depends on the circumstances. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (citing *Lewis*, 523 U.S. at 850).  Thus, "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006).  "[I]n cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient" to shock the conscience. *Id.*  Where there is less or no time to deliberate, however, conduct will shock the conscience only if it is grossly negligent or if the defendant acted deliberately to cause harm. *Kaucher v. County of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006).

Here, the Court will assume without deciding that the applicable standard is deliberate indifference, because Ms. Edwards' allegations do not satisfy that standard, let alone the higher ones that could apply.[1]  "To establish deliberate indifference, [Ms. Edwards] must show the [Defendants] knew of *and disregarded* an excessive risk to [Mr. Stephens'] health and safety."

---

[1] Ms. Edwards maintains that deliberate indifference is the appropriate standard because Defendants had months to implement COVID-19 mitigation procedures ahead of August 2020.  ECF No. 39 at 14.  The University Defendants, however, argue that a higher standard may be applicable given the pressure imposed by the changing circumstances of the COVID-19 pandemic.  ECF No. 30 at 22.

8

*Hope*, 972 F.3d at 329.  The standard is "consistent with recklessness as that term is defined in the criminal law" and thus "requires significantly more than negligence."  *Id.* at 329–30 (internal quotation marks omitted).

Ms. Edwards argues that Defendants exhibited deliberate indifference in several related ways.  She maintains that despite being aware of the risks posed by COVID-19 in August 2020, football players were "required"[2] to return to campus without Defendants having implemented "adequate policies and procedures."  ECF No. 39 at 14.  For example, she faults the school for not cancelling football activities, for having players live in shared housing with inadequate ventilation and insufficient room for social distancing, for failing to provide cleaning supplies and personal protective equipment, and for failing to test students for COVID-19 or otherwise check them for symptoms.  *Id.* at 15.  Ms. Edwards also points to the "far more extensive" and "superior" COVID-19 mitigation plans put in place for the Spring 2021 return to campus as indicative of deliberate indifference in August 2020.  ECF No. 39 at 6.[3]

The fundamental flaw in Ms. Edwards' argument is that it ignores the affirmative actions that Defendants took to address the risk of COVID-19 to students like Mr. Stephens in August 2020.  Indeed, her allegation that "PennWest California took absolutely no steps to prevent or mitigate the spread of COVID-19," is contradicted by numerous other allegations in her Amended

---

[2] As the Court observed in its prior opinion, Ms. Edwards' allegation that Mr. Stephens was "required" to return to school and live in Vulcan Village is contradicted by the rest of her allegations.  ECF No. 24 at 9.  While Mr. Stephens may have felt significant pressure to return to campus in order to maintain his scholarship, Defendants did not "require" him to do so.  *Cf. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d at 1371 (students were not compelled to attend classes despite compulsory schooling law and "financial reasons" that might limit what school the student can attend); *Fennell v. Wetzel*, No. 4:22-CV-00880, 2023 WL 1997116, at *5 (M.D. Pa. Feb. 14, 2023) (plaintiff was not "forced" to receive COVID-19 vaccine despite the privileges he would have lost by choosing not to be vaccinated).

[3] Neither Ms. Edwards' allegations nor her arguments meaningfully distinguish between defendants when arguing that they were deliberately indifferent to the risk of COVID-19.  The Court, accordingly, analyzes the defendants together without attributing specific actions to specific defendants to determine whether they acted with deliberate indifference.  In any event, even if a defendant themselves or itself took no action, that would not plausibly establish deliberate indifference in light of the existence of other precautions being taken at the school to protect students like Mr. Stephens in August 2020.

Complaint.  First, the school moved to remote learning for the Spring 2020 semester.  Second, it planned to reopen for the Fall 2020 semester only with several precautions in place including masking, social distancing, and enhanced cleaning.  Third, the school ultimately decided to keep campus closed for the Fall 2020 semester and continue with remote learning, citing increasing cases.  Fourth, it prevented students from returning to on-campus housing, minimizing the number of persons that those students living in off-campus housing would come into contact with.  Fifth, it required that student athletes like Mr. Stephens be screened for COVID-19 before participating in team activities.  Sixth, it ceased formal football practices, and only allowed the team to practice informally, in groups of five or six.  Seventh, although Ms. Edwards alleges that there was no social distancing between Mr. Stephens' and his roommate, she does acknowledge that there were only two residents in Mr. Stephens' four-person suite.  These allegations show that Defendants did not "disregard" the risk posed by COVID-19.  To the contrary, the allegations demonstrate evolving actions taken by Defendants in response to changing circumstances and information.

Ms. Edwards' allegations regarding further, purportedly better efforts Defendants could have undertaken in August 2020 do not change the outcome.  To be sure, the school could have implemented a stringent contact tracing and testing regimen or implemented masking protocols, like it did for the Spring 2021 semester.  But the "failure to eliminate all risk" of COVID-19 does not equate to deliberate indifference when Defendants took the above steps to address the spread of the virus.  *Hope*, 972 F.3d at 330.  That is the case even when the precautions actually taken proved to be ineffective—and tragically so—as to Mr. Stephens.  *See id.* (prison officials were not deliberately indifferent to risk of COVID-19 even where District Court "criticized the [officials] for the lack of 'effective containment measures,' and for not doing 'nearly enough' to combat COVID-19"); *Kaucher*, 455 F.3d at 428 (prison officials were not deliberately indifferent to risk

of MRSA even though "[i]n retrospect, the[ir] actions may have been insufficient to prevent the [plaintiffs'] infections"); *Jones v. County of Allegheny*, No. 21-1094, 2022 WL 2806779, at *6 (W.D. Pa. June 24, 2022) (Lenihan, M.J.) ("Simply because the execution of Covid-19 protocols may have been nonoptimal at times, the alleged deficiencies fall well short of evidencing deliberate indifference by the named Defendants."), *report and recommendation adopted*, No. 21-1094, 2022 WL 2803111 (W.D. Pa. July 18, 2022) (Hardy, J.); *Porter v. Allegheny County*, No. 20-1588, 2023 WL 2586037, at *11 (W.D. Pa. Mar. 21, 2023) (Dodge, M.J.) (collecting cases rejecting substantive due process claims addressing COVID-19 exposure in prisons).  Indeed, the fact that PennWest California took more aggressive action against COVID-19 for the Spring 2021 semester than it did for the August 2020 semester is attributable to the fact that the risk of COVID-19 would be more pronounced with the campus reopened.

At most, Ms. Edwards' allegations may rise to the level of negligence.[4]  But the caselaw is clear that negligence does not support a § 1983 claim based on substantive due process.  *Hope*, 972 F.3d at 329–30.  The Due Process Clause does not transform every tort into a constitutional violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992) ("[W]e have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law.") (collecting cases).  That is especially so in the context of the "highly unusual and unique circumstances" of the COVID-19 pandemic.  *Hope*, 972 F.3d at 330 (internal quotation marks omitted).  As now-Chief Judge Hornak observed in *Dorley*, "[t]he Supreme Court expects lower federal courts to act as gatekeepers when it comes to defining or expanding substantive due process protections."  129 F. Supp. 3d at 227.  Thus, the Court must act with caution before expanding substantive due process protections into a

---

[4] To be clear, the Court need not and does not consider whether Ms. Edwards has plausibly alleged that Defendants were negligent.

novel context. *Id.* ("[T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharte[]d area are scarce and open-ended.  The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).  It would be inappropriate to do so here, where Ms. Edwards' own allegations show that Defendants took considered action in response to the unique challenges posed by COVID-19.

Because Ms. Edwards has not plausibly alleged conduct that shocks the conscience, she has failed to state a claim under § 1983 for a violation of Mr. Stephens' substantive due process rights.  Accordingly, the Court will dismiss Counts III, IV, and V against the University Defendants and SAI.  The dismissal will be with prejudice because granting leave to amend would be futile in light of Ms. Edwards' failure to plausibly allege conscience shocking conduct after having her original complaint dismissed on that basis.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile . . . .").[5]

## B.      The Court Will Defer Ruling on Ms. Edwards' State Law Claims

Under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over claims that are "so related to claims in the action" over which the court has original jurisdiction. The court may decline to exercise supplemental jurisdiction in several circumstances set forth in § 1367(c), including where "the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  The justification for exercising supplemental jurisdiction "lies in

---

[5] In response to the University Defendants' Motion to Dismiss, Ms. Edwards agreed that her § 1983 claims against PennWest California fail because it is not a "person" who may be held liable under § 1983.  ECF No. 39 at 9.  This is an alternative basis for dismissing Ms. Edwards' § 1983 claims against PennWest California.

considerations of judicial economy, convenience and fairness to litigants;  if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the Court has original jurisdiction over Counts III, IV, and V because those claims raise a federal question under § 1983 regarding Mr. Stephens' substantive due process rights. *See* 28 U.S.C. § 1331.  As explained above, however, the Court will dismiss with prejudice those claims against the University Defendants and SAI.  The only other defendant named in those Counts is Jared Shiner, who has not appeared in this action.  The Court is inclined to sua sponte dismiss those Counts against Mr. Shiner, given that Ms. Edwards does not distinguish between his conduct and that of the other Defendants in her Amended Complaint. *See Zaslow v. Coleman*, 103 F. Supp. 3d 657, 664 (E.D. Pa. 2015) (court may dismiss a claim sua sponte where "the inadequacy of the complaint is apparent as a matter of law" (internal quotation marks omitted)).  However, before doing so, the Court will provide Ms. Edwards an opportunity to "respond to the perceived deficiencies" in her § 1983 claims against Mr. Shiner only. *Id.* (before dismissing claim sua sponte "the court must afford the plaintiff an opportunity to respond to the perceived deficiencies in the complaint").

Accordingly, the Court will defer a decision on whether to exercise supplemental jurisdiction over Ms. Edwards' state law claims.  If the Court ultimately dismisses the federal claims against Mr. Shiner, it will have dismissed all claims over which it has original jurisdiction and remanding Ms. Edwards' state law claims would be supported be considerations of judicial economy, convenience, and fairness.

**IV.      Conclusion**

For the foregoing reasons, the Court will **DISMISS WITH PREJUDICE** Counts III, IV, and V as to the University Defendants and SAI.  Otherwise, the pending Motions to Dismiss are **DENIED WITHOUT PREJUDICE**, pending a determination on whether to exercise supplemental jurisdiction over Ms. Edwards' state law claims.


DATED this 4th day of August, 2023.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record